504 S.E.2d 625

**In the Matter of Joseph G. TROISI, Former Judge.**

No. 24204.

Supreme Court of Appeals of
West Virginia.

Submitted March 24, 1998.

Decided June 18, 1998.

Sherri D. Goodman, Chief Lawyer Disciplinary Counsel, Charleston.

Cynthia Santoro Gustke, Harry G. Deitzler, Hill, Peterson, Carper, Bee & Deitzler, Charleston, for Troisi.

MAYNARD, Justice:

This matter is before the Court upon the recommendations of the Judicial Hearing Board and Office of Disciplinary Counsel that this Court accept and ratify proposed settlement agreements entered into between the above parties and the respondent, Joseph G. Troisi, former Judge of the Third Judicial Circuit. These agreements, if adopted by the Court, will dispose of all judicial and lawyer ethics complaints in this case. After careful consideration of the recommendations, we have concluded that it is appropriate to accept the proposed settlement agreements. In addition, we herein adopt a new procedure, of prospective applicability, governing the imposition of lawyer discipline in cases of judicial misconduct.

## I.

### FACTS

On June 26, 1997, the respondent, Joseph G. Troisi, who was at that time Judge of the Third Judicial Circuit, initiated a physical confrontation with a criminal defendant, William Witten, in the respondent's Pleasants County courtroom. As a result of this incident, the Administrative Director of the Courts filed a complaint against the respondent with the Judicial Investigation Commission alleging that the respondent had violated Canons 1A, 2A, and 3B(4) of the Code of Judicial Conduct. Because the respondent was a member of the Judicial Investigation Commission, Judicial Disciplinary Counsel Charles R. Garten was deemed disqualified, and the Administrative Director appointed Chief Lawyer Disciplinary Counsel, Sherri D. Goodman, to investigate the complaint

pursuant to Rule 5 of the Rules of Judicial Disciplinary Procedure.[1]

On July 7, 1997, Ms. Goodman filed a report with this Court concerning the June 26, 1997 incident. After review of this report, the Court, sitting in lieu of the Judicial Investigation Commission, found the existence of good cause warranting that formal charges be issued and directed the Office of Disciplinary Counsel to prepare formal charges; issued a rule to show cause why the respondent should not be suspended, with or without pay, pending the resolution of the formal charges; and directed the respondent not to hear or decide any further civil or criminal matters until a determination was made about the suspension.

The Office of Disciplinary Counsel filed formal charges with the Court on July 16, 1997. These charges were referred to the Judicial Hearing Board. In addition, the parties briefed the Court on whether the respondent should be suspended pending resolution of the charges and whether that suspension should be with or without pay. The Court heard oral argument on the suspension issue on September 16, 1997, and suspended the respondent without pay effective September 19, 1997.[2] The Court directed the Judicial Hearing Board to expedite the hearing.

In October, 1997, the respondent pled *nolo contendere* to one count of battery stemming from the June 26, 1997 incident[3] and resigned his position as Judge of the Third Judicial Circuit. On November 18, 1997, after an investigation and a hearing, the Judicial Hearing Board presented to the Court a settlement agreement between the Board and the respondent wherein the respondent agreed to: (1) resign his position as circuit judge; (2) accept a censure from the Court; (3) reimburse the Judicial Hearing Board for the costs and expenses incurred in the investigation of this matter; and (4) not be entitled to back pay during the time he was suspended from his duties as a circuit judge. At the same time, Ms. Goodman, as Chief Lawyer Disciplinary Counsel of the Office of Disciplinary Counsel, presented to the Court a proposed resolution of an impending lawyer discipline charge against the respondent resulting from his battery plea.[4] The parties

---

1. Rule 5 states:

 The Supreme Court of Appeals does hereby establish an Office of Disciplinary Counsel to prosecute violations of the Code of Judicial Conduct and the Rules of Professional Conduct. The Office of Disciplinary Counsel shall consist of separate Lawyer Disciplinary Counsel and Judicial Disciplinary Counsel. Lawyer Disciplinary Counsel shall be primarily responsible for the investigation of complaints of ethical violations by lawyers. Judicial Disciplinary Counsel shall be primarily responsible for the investigation of complaints of ethical violations by judges. Notwithstanding these primary responsibilities, when circumstances warrant, Lawyer Disciplinary Counsel shall have the authority to investigate and prosecute complaints of ethical violations by judges and Judicial Disciplinary Counsel shall have the authority to investigate and prosecute complaints of ethical violations by lawyers.

2. In the single syllabus point of *Matter of Grubb*, 187 W.Va. 228, 417 S.E.2d 919 (1992), this Court stated:

 Under the authority of article VIII, sections 3 and 8 of the *West Virginia Constitution* and Rule II(J)(2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters,* the Supreme Court of Appeals of West Virginia may suspend a judge, who has been indicted for or convicted of serious crimes, without pay, pending the final disposition of the criminal charges against the particular judge or until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed.

 *See also Matter of Atkinson,* 193 W.Va. 358, 456 S.E.2d 202 (1995).

3. The respondent was sentenced to six months' incarceration. The sentence was suspended, and he instead served five days in jail and one year's probation.

4. Pursuant to Rule 3.18 of the Rules of Lawyer Disciplinary Procedure, the Office of Disciplinary Counsel submitted formal charges against the respondent on January 9, 1998. Rule 3.18 states:

 (a) A lawyer who has been convicted of crime that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall, within thirty days of entry of the order of judgment of conviction, forward a copy of the order or judgment to the Office of Disciplinary Counsel. Failure to forward a copy shall constitute an aggravating factor in any subsequent disciplinary proceeding.

 (b) Any court in which any lawyer shall be convicted of any crime that reflects adversely

agreed: (1) the respondent will attend a course of counseling and continue such counseling until he is released; (2) undergo supervision of his practice of law for one year; and (3) take either inactive or active but not practicing status with the State Bar for a period continuing until such time as the details of the supervision of the respondent's law practice are formulated but not less than thirty days following his sentencing on relevant charges.

This Court subsequently received briefs and heard oral argument on the issue of the concurrent jurisdiction in this matter of the Judicial Hearing Board and the Lawyer Disciplinary Board.

## II.

## DISCUSSION

### A. Judicial Disciplinary Proceedings.

 "The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985) (*Gorby II* ). "Judicial disciplinary proceedings are subjects of

the highest public concern." *Matter of Hey*, 192 W.Va. 221, 228, 452 S.E.2d 24, 31 (1994).

With this in mind, we first turn our attention to the specific Canons of the Code of Judicial Conduct which the respondent has been formally charged with violating.

Canon 1 states:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

Canon 2 provides:

A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Lastly, Canon 3B(4) reads:

### B. Adjudicative Responsibilities.

(4) A judge shall be patient, dignified, and courteous to litigants, jurors, wit-

---

on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall, as part of the judgment, direct its clerk to forward a certified copy of the order or judgment of conviction with the Office of Disciplinary Counsel.

(c) A plea or verdict of guilty or a conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this rule.

(d) A lawyer shall be deemed to have been convicted within the meaning of this rule upon the entry of the order or judgment of conviction and such lawyer's license may be suspended or annulled thereupon notwithstanding the pendency of an appeal from such conviction.

(e) Upon receipt of the order or judgment, which shall be conclusive evidence of the guilt of the crime or crimes of which the lawyer has been convicted, the Office of Disciplinary [sic] shall prepare formal charges to be filed with the Clerk of the Supreme Court of Appeals. The formal charge shall inform the lawyer of the right to file a written request for a mitigation hearing with [sic] thirty days of the date of the charge. Service of the formal charge shall be made in accordance with Rule 2.11.

(f) Mitigation hearings on formal charges of a conviction of crime reflecting adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall be conducted by a Hearing Panel Subcommittee of the Lawyer Disciplinary Board. Whether a mitigation hearing is warranted in a particular instance will depend upon a variety of factors, including but not limited to, the nature of the respondent's misconduct, surrounding facts and circumstances, previous ethical violations, the wilfulness of the conduct, and the adequacy of the respondent's previous opportunity to present evidence for a determination of appropriate sanctions. The procedure for such hearings shall be in accordance with the rules governing other lawyer disciplinary hearings. The office of disciplinary counsel may introduce evidence of aggravating factors at any mitigation hearing. Unless the parties agree to an annulment of the lawyer's license to practice law, the matter will be referred to the Supreme Court of Appeals for disposition upon the report of a Hearing Panel Subcommittee of the Lawyer Disciplinary Board in accordance with the rules governing other disciplinary matters.

nesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

■ The formal charges against the respondent consist of two counts. Count 1 concerns the respondent's alleged initiation of a physical confrontation with a criminal defendant in his courtroom. Count II alleges numerous instances wherein the respondent acted in an unprofessional and undignified manner.[5] Our task here "is to evaluate the record developed and to assess the recommendation of the Judicial Hearing Board in light of that evaluation." *Matter of Hey*, 193 W.Va. 572, 577, 457 S.E.2d 509, 514 (1995). "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syllabus Point 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980).

■ The record clearly shows that the respondent engaged in the conduct alleged in Count I of the formal charges. At the hearing on this matter before the Judicial Hearing Board the respondent acknowledged that his conduct was "inappropriate, wrong, and unlawful." In light of these facts, we certainly believe that sanctions against the respondent are in order. A reiteration of the much-publicized details of this case is not necessary to conclude that the respondent's conduct was egregious. Nor is an extended discourse necessary to show how the respondent's behavior violated the Judicial Canons set forth above. As noted previously, the respondent has agreed to: (1) resign his position as circuit judge; (2) accept a censure from the Court; (3) reimburse the Judicial Hearing Board for the costs and expenses incurred in

the investigation of this matter; and (4) not be entitled to back pay during the time he was suspended from his duties as a circuit judge. We accept this settlement agreement.

In *Matter of Hey*, 193 W.Va. 572, 457 S.E.2d 509 (1995), this Court explained that the sanctions which Judge Hey voluntarily agreed to accept in the proposed settlement agreement exceeded the sanctions which the Court could appropriately impose under Rule 4.12 of the Rules of Judicial Disciplinary Procedure. This is also the case here inasmuch as the respondent has agreed to resign his position as circuit judge.[6] According to Rule 4.12, which states in relevant part:

The Judicial Hearing Board may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Code of Judicial Conduct: (1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to one year; (5) a fine of up to $5,000; or (6) involuntary retirement for a judge because of advancing years and attendant physical or mental incapacity and who is eligible to receive retirement benefits under the judges' retirement system or public employees retirement system.

The Court in *Hey* noted, however, that,

in addition to the sanctions which this Court may impose under Rule 4.12, Rule 4.10 of the Rules of Judicial Disciplinary Procedure provides legal authority for the Court to impose other sanctions if the parties agree to those sanctions. Rule 4.10 specifically provides, in part: "If the parties [in a judicial disciplinary matter] consent to the recommended disposition, the matter shall be filed with the Supreme Court of Appeals for entry of an order

---

5. In Count II of the amended formal charges, the Office of Disciplinary Counsel alleges that "[w]ithin the two years preceding the complaint in this matter, Respondent has engaged in a pattern of violating the Code of Judicial Conduct by displaying anger and impatience, speaking to witnesses, lawyers and parties in a sarcastic and demeaning manner and by using inappropriate language of a sexual and racial manner." A list of specific instances of this alleged conduct is included in the amended formal charges.

6. The Judicial Hearing Board does not have the authority to recommend the removal of a circuit court judge, and this Court does not have the authority to remove a circuit court judge. Rather, Article IV, section 9 of the *West Virginia Constitution* provides that the house of delegates shall have the sole power of impeachment of officials, and that the senate shall have the sole power to try impeachment of officials.

consistent with the recommended disposition[.]"

*Matter of Hey*, 193 W.Va. 572, 577–578, 457 S.E.2d 509, 514–515. The parties here have agreed to the sanctions contained in the settlement agreement including the respondent's resignation. Accordingly, this Court has the authority to impose these sanctions.

For the reasons stated above, the settlement agreement recommended by the Judicial Hearing Board is accepted, adopted, and ratified.

### B. Lawyer Disciplinary Proceedings.

 Pursuant to Rule 3.18 of the Rules of Lawyer Disciplinary Procedure, Chief Lawyer Disciplinary Counsel submitted formal charges against the respondent based upon his plea of *nolo contendere* to one count of battery stemming from the physical altercation of June 26, 1997.[7] We now consider the stipulated sanctions agreed to by the parties in response to these charges.

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). It is undisputed that the respondent pleaded *nolo contendere* to one count of battery. Included in the record is a copy of the order adjudging the respondent guilty of battery. According to Rule 3.18(c) of the Rules of Lawyer Disciplinary Procedure "[a] conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this rule." Further, "[w]here there has been a final criminal conviction,

proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syllabus Point 2, *Committee on Legal Ethics v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989). We therefore find the existence of an ethical violation.

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). Also,

[i]n disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

Syllabus Point 2, *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled on other grounds by Committee on Legal Ethics v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993).

 After careful consideration of all of the facts of this case, we find that the stipulated sanctions herein are appropriate. In the formal charges submitted to this Court, Chief Lawyer Disciplinary Counsel explained her belief that more severe sanctions are not warranted in light of the nature of the respondent's conduct and the other penalties incurred by the respondent in other proceedings. We agree with this assessment. The conduct for which the respondent was convicted of battery, which gave rise to the Rule 3.18 charges, is the same conduct for which

7. *See* footnote 3.

the respondent was disciplined as a judge. As noted previously, the respondent has resigned his judicial position, received a censure, reimbursed the Judicial Hearing Board for investigation expenses in this matter, and suffered a loss of back pay during the time he was suspended. In addition, the respondent served five days in jail and received one year's probation for his battery conviction. Considering that all of this is punishment for one single act of misconduct, we find absolutely no reason to discipline the respondent as a lawyer beyond the sanctions stipulated to by the parties.

For these reasons, the stipulation of sanctions entered into by Chief Lawyer Disciplinary Counsel and the respondent and presented to this Court is accepted, adopted, and ratified.

### C. Concurrent Jurisdiction

We also find it necessary to consider the issue of the concurrent jurisdiction of the Judicial Hearing Board and the Lawyer Disciplinary Board in matters like the instant one.

■ This Court has previously recognized that it is sometimes appropriate to discipline a judge both as a judge and as a lawyer for the same misconduct. In *Matter of Hey*, 193 W.Va. 572, 457 S.E.2d 509 (1995), the Court accepted the recommended settlement between the Judicial Investigation Commission and the respondent, resulting from the respondent's misconduct as a judge, which included the respondent's resignation from the bench *and* from the practice of law. In *Matter of Grubb*, 187 W.Va. 228, 417 S.E.2d 919 (1992), judicial disciplinary proceedings were initiated in response to a several-count federal indictment against a circuit judge. After the judge's subsequent conviction, the Committee on Legal Ethics instituted disciplinary proceedings against him recommending that his license to practice law be annulled. *See Committee on Legal Ethics v. Grubb*, 187 W.Va. 608, 420 S.E.2d 744 (1992). "A single act of misconduct may offend the

public interest in a number of areas and call for an appropriate remedy as to each hurt.... The remedies are not cumulative to vindicate a single interest; rather each is designed to deal with a separate need." *In re Mattera*, 34 N.J. 259, 266–267, 168 A.2d 38, 42 (1961). In cases of judicial misconduct, more than a single interest is implicated. As noted previously, "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985). On the other hand, "[t]he primary purpose of the [Lawyer Disciplinary Board] is ... the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys[.]" *Committee on Legal Ethics v. Ikner*, 190 W.Va. 433, 436, 438 S.E.2d 613, 616 (1993) (citation omitted). In cases of judicial misconduct, it is vital that all of these interests are protected.[8]

■ The issue of whether the Lawyer Disciplinary Board and the Judicial Hearing Board have concurrent jurisdiction in cases similar to the instant one has not been previously addressed by the Court. As noted above, the Court accepted without comment the concurrent jurisdiction of the Judicial Hearing Board and the Lawyer Disciplinary Board in *Matter of Grubb, supra*. It is the position of the Lawyer Disciplinary Board and the Office of Disciplinary Counsel that sanctions against an attorney's law license may be imposed only through the lawyer disciplinary process so that the Judicial Hearing Board is precluded from recommending a sanction against a judge's law license as part of a judicial disciplinary procedure. The Lawyer Disciplinary Board asserts, basically, that its expertise in the area of lawyer discipline enables it to recommend the most appropriate sanctions in each case and to fulfill its mandate to protect the public. The Judicial Hearing Board contends, on the other hand, that in cases like the

---

**8.** We note that many of our sister states also recognize that an attorney may be subjected to discipline as a lawyer for acts of misconduct performed in his capacity as a judge. *See* Frank

D. Wagner, Annotation, *Misconduct In Capacity As Judge As Basis For Disciplinary Action Against Attorney*, 57 A.L.R.3d 1150 (1974).

instant one where the respondent is both a judge and a lawyer, it should have the jurisdiction to recommend sanctions against the respondent's law license as part of the judicial disciplinary process. The Judicial Hearing Board relies heavily on the case of *Matter of Hey*, 193 W.Va. 572, 457 S.E.2d 509 (1995).

We agree with the Judicial Hearing Board. The institution of separate judicial and lawyer disciplinary proceedings arising from the same misconduct is fraught with difficulties. First, such a process is terribly inefficient. It normally entails separate investigations, separate hearings below, and culminates in separate hearings before this Court. In considering the recommendations of two separate boards, the Court receives two records, two sets of briefs, and disposes of the cases with two opinions. Thus, all parties involved are plagued with the effort and expense of a duplication of labor despite the fact that all charges arose from the same set of facts. In addition, there is the issue of fairness. A respondent charged with misconduct must expend a great amount of time, effort, and resources during the prosecution of disciplinary charges. Unfortunately, a respondent who is a judge may have to endure such an ordeal twice, first before the Judicial Hearing Board and then before the Lawyer Disciplinary Board.

In this case, these difficulties were not present. As noted previously, Chief Lawyer Disciplinary Counsel, in lieu of Judicial Disciplinary Counsel, investigated the judicial complaint, reported to this Court, prepared formal charges, and negotiated a settlement agreement with the respondent. Acting in her regular capacity, she then filed formal lawyer disciplinary charges and negotiated a proposed resolution to these charges with the respondent. The respondent's judicial sanctions were properly considered when determining appropriate sanctions as a lawyer. Both the judicial and lawyer settlement agreements were presented to the Court at the same time. The manner in which this case was prosecuted, because of its unique circumstances, suggests to us that all cases involving judicial and lawyer discipline should be disposed of in a single disciplinary procedure. This procedure should be simple, efficient, economical, and effective.

Instructive in formulating such a procedure to be used in cases of judicial misconduct are the Minnesota *Rules Of Board On Judicial Standards.* According to these rules, the Board on Judicial Standards, which is analogous to our Judicial Hearing Board, has exclusive jurisdiction over the conduct of all full-time judges including conduct constituting a violation of the Code of Judicial Conduct *or* the Code of Professional Responsibility.[9] The Board, when making its rec-

---

9. Minn.R.Board Jud.Stand. 2(b) states:

> The board shall have jurisdiction over the conduct of all judges. This jurisdiction shall include conduct that occurred prior to a judge assuming judicial office. In cases of full-time judges, including retired judges subject to assignment, this jurisdiction shall be exclusive. In cases of part-time judges, including referees of conciliation court, the board shall have exclusive jurisdiction in matters involving conduct occurring in a judicial capacity. The Lawyers Professional Responsibility Board may also exercise jurisdiction to consider whether discipline as a lawyer is warranted in matters involving conduct of a part-time judge not occurring in a judicial capacity, including conduct occurring prior to the assumption of judicial office.

Minn.R.Board Jud.Stand. 2(c) reads:

> The Lawyers Professional Responsibility Board shall have jurisdiction over a lawyer who is no longer a judge with reference to allegedly unethical conduct that occurred dur-

ing or prior to the time when the lawyer held judicial office, provided such conduct has not been the subject of judicial disciplinary proceedings as to which a final determination has been made by the Supreme Court.

According to Minn.R.Board Jud.Stand. 4, in relevant part:

> **(a) Grounds for Discipline Shall Include:**
> (6) Conduct that constitutes a violation of the Code of Judicial Conduct or Professional Responsibility.

See also *Office of Disciplinary Counsel v. Anonymous Attorney A.*, 528 Pa. 83, 595 A.2d 42 (Pa.1991) where the Supreme Court of Pennsylvania held that the Judicial Inquiry and Review Board has exclusive jurisdiction to discipline judicial officers for misconduct so as to preclude action by the Disciplinary Board against those same judicial officers who are also attorneys. The court relied upon a provision of the Pennsylvania Constitution that specifically confers jurisdiction upon the Judicial Inquiry and Review Board to investigate judicial officers for violations of the canons of legal ethics.

ommendations to the Minnesota Supreme Court concerning the discipline of a judge, may also recommend the imposition of discipline as an attorney.[10] When the Board recommends the removal of a judge, the Court notifies the judge and the Lawyers Professional Responsibility Board and gives them an opportunity to be heard on the issue of lawyer discipline.[11]

The Lawyer Disciplinary Board contends here that its expertise is necessary in cases involving lawyer misconduct. We are confident, however, that this Court is qualified to determine both the propriety of lawyer discipline in cases of judicial misconduct as well as the nature of such discipline. "Article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia." Syllabus Point 1, *Lane v. West Virginia State Board of Law Examiners,* 170 W.Va. 583, 295 S.E.2d 670 (1982). Further, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984). We wish to make absolutely clear that this Court is the ultimate authority in both judicial and legal ethics cases, and, therefore, this Court will determine the proper procedure to be followed where the alleged conduct in a case arguably falls under the jurisdiction of both the Lawyer Disciplinary Board and the Judicial Hearing Board. We also emphasize that if lawyer discipline is considered appropriate, the Lawyer Disciplinary Board will be given notice and the

opportunity to be heard fully on the issue before this Court. This is in accord with this Court's holding in Syllabus Point 5 of *Lawyer Disciplinary Bd. v. Vieweg,* 194 W.Va. 554, 461 S.E.2d 60 (1995) where we stated:

Where a conflict exists between Disciplinary Counsel and the Hearing Panel Subcommittee of the Lawyer Disciplinary Board with regard to the recommendations concerning a petition for reinstatement to the practice of law or other disciplinary proceedings, Disciplinary Counsel shall notify the Hearing Panel Subcommittee of the existence of the conflict. If the conflict is not resolved in advance, the Hearing Panel Subcommittee shall have the right to representation by separate counsel before this Court upon review of the petition.

 Accordingly, we hold that in instances of the misconduct of a judge which results in judicial disciplinary proceedings, the Lawyer Disciplinary Board has no jurisdiction to initiate lawyer disciplinary proceedings. Instead, the Judicial Hearing Board, at the time it presents its recommendations to this Court on the issue of judicial discipline, shall also present a recommendation concerning whether lawyer discipline is warranted and, if so, the nature of the discipline.[12] If the Judicial Hearing Board determines that lawyer discipline is warranted, it shall promptly notify the respondent judge and the Lawyer Disciplinary Board and give them an opportunity to be heard in this Court on the issue of lawyer discipline. This Court will review *de novo* the recommendation of the Judicial Hearing Board on the issue of lawyer discipline. If this Court de-

---

**10.** Minn.R.Board Jud.Stand. 11(d) states:

Based on clear and convincing evidence in the hearing record, the board shall make a recommendation to the Supreme Court of any of the following sanctions:
(1) Removal;
(2) Retirement;
(3) Imposing discipline as an attorney;
(4) Imposing limitations or conditions on the performance of judicial duties.
(5) Reprimand or censure;
(6) Imposing a civil penalty;
(7) Suspension with or without pay; or
(8) Any combination of the above sanctions.

**11.** Minn.R.Board Jud.Stand. 13(g) states:

When the Board on Judicial Standards recommends the removal of a judge, the Court shall promptly notify the judge and the Lawyers Professional Responsibility Board and give them an opportunity to be heard in the Court on the issue of lawyer discipline.

Concerning the removal of a judge in West Virginia, *see* footnote 5.

**12.** If a judge is convicted of a crime as set forth in Rule of Lawyer Disciplinary Procedure 3.18 or a felony as set forth in Rule of Lawyer Disciplinary Procedure 3.19, the Judicial Hearing Board shall prepare formal charges to be filed with the Clerk of this Court.

termines that lawyer discipline is appropriate contrary to the recommendation of the Judicial Hearing Board, this Court will notify the respondent judge and the Lawyer Disciplinary Board at that time. The issues of lawyer discipline and judicial discipline shall be presented to the Court in the same hearing.

Pursuant to article VIII, section 8 of the *West Virginia Constitution,* this Court has the inherent and express authority to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]" Syllabus Point 5, *Committee On Legal Ethics v. Karl,* 192 W.Va. 23, 449 S.E.2d 277 (1994). In order to bring the Rules of Judicial Disciplinary Procedure into conformity with our holding here, we amend the rules as set forth below. First, the following statement is added to Rule of Judicial Disciplinary Procedure 4.12:

> In addition, the Judicial Hearing Board may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a judge's violation of the Rules of Professional Conduct: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment.

In addition, we adopt a new Rule of Judicial Disciplinary Procedure 3.12. "Exclusive Jurisdiction" which states:

> The Judicial Hearing Board may recommend or the Supreme Court of Appeals may consider the discipline of a judge for conduct that constitutes a violation of the Rules of Professional Conduct. If discipline of a judge for a violation of the Rules of Professional Conduct is deemed appropriate, the Judicial Hearing Board or the Supreme Court of Appeals shall notify the judge and the Lawyer Disciplinary Board and give them an opportunity to be heard on the issue of lawyer discipline, if any, to be imposed. The Judicial Hearing Board shall have exclusive jurisdiction to recommend discipline of a judge for conduct that

constitutes a violation of the Rules of Professional Conduct for lawyers.

These amendments are to become effective as of the date of this opinion.

### III.

### CONCLUSION

For the reasons stated above, the settlement agreements entered into between the parties concerning both judicial and lawyer discipline are accepted, adopted, and ratified, and these proceedings are dismissed. Also, the amendments to the Rules of Judicial Disciplinary Procedure set forth above are adopted in order to bring those rules into conformity with the Court's holding herein on the issue of concurrent jurisdiction.

Agreements accepted, adopted, and ratified, and proceedings dismissed.