625 S.E.2d 731

**In the Matter of William Tom TOLER, Magistrate for Wayne County, West Virginia.**

**No. 31797.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 15, 2005.

Decided Dec. 2, 2005.

---

Charles R. Garten, Judicial Disciplinary Counsel, Judicial Investigation Commission, Charleston, for Complainant.

Donald R. Jarrell, Wayne, for Respondent.

MAYNARD, Justice:

This judicial disciplinary proceeding arises from a complaint filed with the Judicial Investigation Commission (hereinafter, "the Commission") alleging that Wayne County

Magistrate William Tom Toler violated several Canons of the West Virginia Code of Judicial Conduct. Throughout the period of this disciplinary proceeding, Mr. Toler was suspended without pay as a result of allegations that he engaged in sexual misconduct while performing his duties as a Magistrate of Wayne County. The Commission found probable cause that Mr. Toler violated Canon 1(A), Canon 2(A), Canon 2(B), Canon 3(A), and Canon 3(B)(2) of the Code of Judicial Conduct. The matter was then forwarded to the Judicial Hearing Board (hereinafter, "the Board"). The Board concluded that Mr. Toler violated Canon 1(A) and Canon 2(A) and recommended: (1) censuring Mr. Toler; (2) suspending him for one year without pay; (3) fining him $5,000.00; (4) requiring that Mr. Toler pay the costs of the proceedings before the Judicial Hearing Board; and (5) providing that the sanctions be imposed separately for each of the four violations committed by Mr. Toler. Having reviewed the recommendation, all matters of record, and the briefs and arguments of counsel, we find that Mr. Toler violated the Code of Judicial Conduct. Thus, for the reasons set forth below, the sanctions recommended by the Board are hereby adopted and imposed by this Court.

## I.

### FACTS

On July 8, 2004, the Acting Administrator of this Court filed a complaint against William Tom Toler, Magistrate of Wayne County, with the Judicial Investigation Commission alleging among other things that Mr. Toler had been charged with the commission of serious criminal offenses which would also constitute a violation of the Code of Judicial Conduct. Attached to the complaint was a letter from the Chief Judge of the Twenty-fourth Judicial Circuit stating that on July 7, 2004, a Wayne County grand jury indicted Mr. Toler on eight felony counts of sexual abuse, a count of demanding a bribe, and a misdemeanor count of indecent exposure.

On July 7, 2004, pursuant to Rule 2.14(d)(1) [1] of the Rules of Judicial Disciplinary Procedure, the Chief Justice of this Court ordered the suspension of Mr. Toler without pay while the criminal matter against him was pending. On July 16, 2004, a separate order was entered by this Court stating that there was probable cause to believe that Mr. Toler engaged in, or was engaging in, a serious violation of the Code of Judicial Conduct. That order also provided that Mr. Toler was suspended without pay and prohibited from hearing any further civil or criminal cases or performing any other judicial functions pending the resolution of the matter. Following those orders, we remanded the complaint back to the Judicial Investigation Commission for the filing of formal charges, and held that such charges would be held in abeyance pending the outcome of the criminal charges against Mr. Toler.

On August 5, 2004, the initial formal charges against Mr. Toler were filed with the Judicial Hearing Board alleging violations of Canon 1(A), Canon 2(A), Canon 2(B), Canon 3(A), and Canon 3(B)(2) of the Code of Judicial Conduct. On July 14, 2005, the formal charges were amended to include two additional counts against Mr. Toler which had been filed in a superceding criminal indictment in the Circuit Court of Wayne County.

During the general election on November 4, 2004, while criminal charges were pending against him, Mr. Toler was re-elected to his post as magistrate. On February 24, 2005, Mr. Toler was acquitted by a jury of the criminal charges against him in the Circuit Court of Wayne County. Thereafter, on March 4, 2005, Mr. Toler filed a motion with this Court seeking reinstatement as magistrate with back pay. On June 1, 2005, this Court again held Mr. Toler's motion for reinstatement in abeyance pending the full development of the record through the judicial investigation process. *See In re Toler*, 216 W.Va. 743, 613 S.E.2d 604 (2005).

---

1. Rule 2.14(d)(1) of our Rules of Judicial Disciplinary Procedure provides that,

    [i]f the judge has been convicted of a serious offense or has been indicted or otherwise charged with a serious offense, the Chief Jus-

tice may order that the judge not hear any further civil or criminal matters or perform other judicial functions while the matter is pending, with or without pay.

On July 13, 2005, and July 14, 2005, the complaint against Mr. Toler was heard before the West Virginia Judicial Hearing Board. The Commission called four witnesses during its presentation of the case who claimed they were victims of Mr. Toler's inappropriate behavior. All four witnesses testified that prior to the criminal trial wherein Mr. Toler was accused of sexual assault and other charges, that none of the four individuals knew each other and none had discussed any of the allegations between and/or among themselves.

The first witness, a corrections officer in Wayne County, stated that on one occasion while she and Mr. Toler were alone in the magistrate's office, that Mr. Toler began walking toward her and stood very close to her face, followed by him putting his hand and his finger on her breasts. He then asked her if he could "go downtown on her." Mr. Toler further asked if she had anybody who could do that to her. She understood Mr. Toler's suggestion as a solicitation for oral sex.

The Commission's second witness testified that on the evening of March 2, 2001, that her husband beat her up and she left her house and went to her sister's residence to stay for the night. The witness explained that she and her husband were going through a divorce at the time. She said the next morning she went to see Mr. Toler in hopes of filing a domestic violence petition against her husband. While she was being assisted by a magistrate assistant in filling out the domestic violence petition, Mr. Toler entered the office with her husband. He then awarded the marital home to her husband and gave her four hours to remove her belongings from the house. Minutes later, she and Mr. Toler were alone in his office. Mr. Toler told her that he could help her if she would help him. He added that he would help her get a lawyer and would see to it that her husband paid dearly. According to this witness, he then grabbed her blouse and pulled it up along with her bra exposing her breasts and put his hands on her breasts. Mr. Toler then removed one hand from her breast and grabbed her between the legs and told her he wanted to f* *k her. This behav-ior continued until she was able to leave his office.

A third witness described one occasion when she and Mr. Toler were alone in his office because she was inquiring about a case she had filed against another individual in magistrate court during a previous month. Mr. Toler said he did not know anything about the case, but stated that he could cure her problems. When she said she did not understand what he meant, he explained that men only want one thing and began walking toward her. She said he grabbed her breasts with both hands and she angrily told him to get his hands off her. Mr. Toler then laughed and sat down on the corner of his desk. After Mr. Toler attempted this same behavior a second time she immediately left his office.

The fourth witness testified that she went to Mr. Toler to complete a domestic violence petition following a fight with her boyfriend which required her to seek medical attention. While she and Mr. Toler were alone in his office, he asked her if she liked sex and if she was any good at performing oral sex. She completed the necessary paperwork for the domestic violence petition and proceeded to the elevator. Mr. Toler entered the elevator with her and kissed her on the mouth as soon as the doors closed. He then grabbed her hands and told her he wanted to show her something and he forced her hands between his legs. While he held her hands on his crotch he asked her if she liked his penis. She pulled away from Mr. Toler, exited the elevator, and left the building.

On August 22, 2005, the Judicial Hearing Board filed its Recommended Findings of Fact, Conclusions of Law, and Proposed Disposition with regard to the charges against Mr. Toler. The Board found that Mr. Toler had committed inappropriate sexual contact with four different women on four separate occasions while performing his official duties as a magistrate. It recommended that Mr. Toler be censured; that he be suspended for one year without pay; that he be fined $5,000.00; and that he pay the costs of the proceedings before the Judicial Hearing Board. In addition to those specific recommendations against Mr. Toler, the Board rec-

ommended that the sanctions be imposed consecutively for each of the four separate violations of the Code of Judicial Conduct committed by Mr. Toler against the four female victims. The Board further stated that if it had lawful authority it would recommend the removal of Mr. Toler from the Office of Magistrate of Wayne County because he had violated the public's trust and diminished the public's confidence in the integrity of the judiciary.

## II.

### STANDARD OF REVIEW

In cases in which this Court is asked to discipline judicial officers,[2] we independently review the record to determine if the findings of fact and recommendations of the Hearing Board are appropriate. As we stated in Syllabus Point 1 of *In re Browning*, 192 W.Va. 231, 452 S.E.2d 34 (1994), " '[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syllabus Point 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980)." Included "within this independent evaluation is the right to accept or reject the disciplinary sanction recommended by the Board." *Matter of Crislip*, 182 W.Va. 637, 638, 391 S.E.2d 84, 85 (1990).

Moreover, pursuant to Rule 4.5 of the West Virginia Rules of Judicial Disciplinary Procedure, the burden of proof to be applied in judicial disciplinary proceedings is that the allegations of the formal charge must be proved by clear and convincing evidence in order to recommend the imposition of discipline on any judge. *See* Syllabus Point 4, *In re Pauley*, 173 W.Va. 228, 314

S.E.2d 391 (1983) ("Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.' ") Therefore, this Court must review both the record and the law in this case *de novo* and determine if clear and convincing evidence exists to prove the allegations in the complaint against Mr. Toler.

Additionally, in accordance with the directives found in *Browning*, we do note, however, that substantial consideration should be given to the Hearing Board's findings of fact. "This consideration does not mean that this Court is foreclosed from making an independent assessment of the record, but it does mean that absent a showing of some mistake or arbitrary assessment, findings of fact are to be given substantial weight." 192 W.Va. at 234, n. 4, 452 S.E.2d at 37, n. 4.

Applying the foregoing standards, we now review the charges against Mr. Toler and the Board's recommended sanctions.

## III.

### DISCUSSION

The Judicial Investigation's Counsel states that Mr. Toler violated Canon 1(A)[3] and Canon 2(A)[4] of the Code of Judicial Conduct and urges this Court to adopt the Judicial Hearing Board's recommended sanctions and impose them upon Mr. Toler consecutively. Conversely, Mr. Toler argues that the recommended sanctions are not appropriate because there were only two verified complaints filed against him in this action and

---

2. Magistrates are "judges" within the meaning of the Code of Judicial Conduct and are subject to its Canons. Canon 6, Code of Judicial Conduct (1995).

3. Canon 1(A) of the Code of Judicial Conduct provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judi-

ciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

4. Canon 2(A) of the Code of Judicial Conduct provides: "A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

both are now barred by the statute of limitations. He further maintains that the other witnesses listed in the Judicial Investigation Commission's Recommended Findings of Fact, Conclusions of Law, and Proposed Disposition, never actually filed complaints against him and therefore evidence from those witnesses should not be considered in the underlying proceedings by this Court.

With regard to Mr. Toler's statute of limitations defense, the Judicial Counsel explains that the case before this Court arises out of a complaint filed by the Acting Administrative Director of the Courts on July 8, 2004, one day after learning that Mr. Toler had been charged in the Circuit Court of Wayne County in a nine count indictment returned July 7, 2004. On August 5, 2004, formal charges were filed by the Judicial Investigation Commission against Mr. Toler, while on July 14, 2005, amended formal charges were filed by the Commission against Mr. Toler.

After carefully reviewing the facts of this case, it is clear to us that all of the actions taken by the Acting Administrative Director of the Courts in filing the original complaint and all actions taken by the Commission to file formal charges as directed by this Court were done well within the two-year limitations period. Rule 2.12 of our Rules of Judicial Disciplinary Procedure provides that, "[a]ny complaint filed more than two years after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the Code of Judicial Conduct, shall be dismissed by the Commission." The record in this case shows that the initial complaint was filed within one day of the indictment against Mr. Toler, while the amended formal charges were filed one year and seven days after that indictment. We find that there is no violation of Rule 2.12 with regard to the two-year statute of limitations on the filing of complaints.

Having found Mr. Toler's argument with regard to the statute of limitations to be without merit, we now consider whether the evidence supports the Commission's findings that Mr. Toler violated the Code of Judicial Conduct.

It is well settled that under the West Virginia Constitution, the Supreme Court of Appeals of West Virginia has the authority to censure or temporarily suspend a magistrate. W.Va. Const., Article VIII, § 8. Moreover, the West Virginia Rules of Judicial Disciplinary Procedure Rule 4.12 enumerates the sanctions that the Judicial Hearing Board may recommend and that this Court may impose for violations of the Code of Judicial Conduct. Possible sanctions include: (1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to 1 year; (5) a fine of up to $5,000.00; and (6) involuntary retirement in limited circumstances. Additionally, this Court can assess the cost of the disciplinary proceedings against a judge. *Id.*

"The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *In the Matter of Gorby,* 176 W.Va. 16, 339 S.E.2d 702 (1985). Thus, "[u]nder the authority of article VIII, sections 3 and 8 of the West Virginia Constitution and Rule [4.12] of the [West Virginia Rules of Judicial Disciplinary Procedure], the Supreme Court of Appeals of West Virginia may suspend a judge, who has been indicted for or convicted of serious crimes, without pay, pending the final disposition of the criminal charges against the particular judge or until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed." Syllabus, *In the Matter of Grubb,* 187 W.Va. 228, 417 S.E.2d 919 (1992).

In this case, we have made an independent and exhaustive evaluation of the record by reviewing the formal charges filed against Mr. Toler; the amended formal charges; the Recommended Findings of Fact, Conclusions of Law and Proposed Disposition filed by the Judicial Hearing Board; the briefs filed by both parties in this case; the exhibits; transcripts; orders; motions; and all other remaining information contained in the record before this Court. After carefully reviewing such evidence, we have determined that there was clear and convinc-

ing evidence that Mr. Toler violated Canon 1(A) and Canon 2(A) of the Code of Judicial Conduct. As discussed above, four women testified about the sexual misconduct committed by Mr. Toler after they went to the Magistrate Court of Wayne County seeking assistance from that court. The testimony of those witnesses was direct, clear, and concise, and we find it to be truthful and credible.

Having determined that Mr. Toler's actions did, in fact, violate the Code of Judicial Conduct, we now turn to the issue of whether or not he should receive the sanctions recommended by the Judicial Hearing Board.

The Judicial Hearing Board recommended the following sanctions be imposed by this Court against Mr. Toler:

1.) That Mr. Toler be censured for his conduct;

2.) That Mr. Toler be suspended for one year without pay;

3.) That Mr. Toler be fined $5,000.00;

4.) That Mr. Toler pay the costs of the proceedings before the Judicial Hearing Board;

5.) That the above sanctions be imposed for each of the four violations Mr. Toler committed against the four female victims and that the violations be consecutive for each of the two Canons violated.

■ After fully reviewing the circumstances of this case, we agree with, and therefore, adopt and impose the Board's recommended actions with regard to sanction numbers 1, 2, 3, and 4. Given the clear and convincing evidence that Mr. Toler violated Canon 1(A) and Canon 2(A), we find that he should be censured for his actions; suspended for one year without pay; fined $5,000.00; and ordered to pay the costs of the proceedings before the Judicial Hearing Board.

■ We must now proceed to consider the Judicial Hearing Board's recommended sanction number 5 which provides that the sanctions be imposed consecutively for each of the four violations of the Code of Judicial Conduct committed by Mr. Toler against the four female victims. This is a matter of first impression before this Court.

The Judicial Investigation Counsel points out that there were four separate acts of sexual misconduct committed against four different individuals at four different times. Moreover, all of the misconduct occurred while the women had gone to Mr. Toler to seek help from the magistrate court for various reasons. On each of the four separate occasions not only did Mr. Toler engage in improper sexual touching of the women or forcing them to touch him, he engaged in outrageous and inappropriate talk about sex or sexual conduct. The Judicial Counsel contends that the Judicial Hearing Board's recommended sanctions must be imposed consecutively for such egregious conduct as that of Mr. Toler's separate and distinct violations of the Code of Judicial Conduct.

■ In Syllabus Point 4 of *Matter of Troisi,* 202 W.Va. 390, 504 S.E.2d 625 (1998), we explained that, " '[p]ursuant to article VIII, section 8 of the West Virginia Constitution, this Court has the inherent and express authority to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]" ' Syllabus Point 5, *Committee On Legal Ethics v. Karl,* 192 W.Va. 23, 449 S.E.2d 277 (1994)."

Moreover, as discussed earlier in this opinion, W.Va. Const., Art. VIII, § 8, in part, provides: "Under its inherent rule-making power ... the supreme court of appeals is authorized to censure or temporarily suspend any justice, judge or magistrate having the judicial power of the State, including one of its own members, for *any* violation of any such code of ethics, code of regulations and standards....." (Emphasis added). In addition, Rule 4.12 of the Rules of Judicial Disciplinary Procedure provides for the specific sanctions which may be imposed for a violation of the Code of Judicial Conduct. The relevant section of Rule 4.12 for purposes of the resolution of this issue is as follows: "The Judicial Hearing Board may recommend or the Supreme Court of Appeals may impose any one or more of the following

sanctions for *a* violation of the Code of Judicial Conduct. . . ." (Emphasis added).

It is clear to us that Rule 4.12 of the Rules of Disciplinary Procedure sets forth available sanctions for "a" violation of the Code of Judicial Conduct. It is equally apparent that W.Va. Const., Art. VIII, § 8 provides authorization for this Court to sanction a judicial officer for "any" violation of the Code. In this case, the Judicial Hearing Board recommended sanctions against Mr. Toler for each of the four separate violations against each of the four victims in this case. Having found that Mr. Toler did, in fact, violate the Code of Judicial Conduct on at least four different occasions, in four completely separate and distinct situations, and against four separate individuals, it simply would make little or no sense to find in any other manner than to impose sanctions against Mr. Toler for each of the separate violations and to impose such sanctions consecutively. Given the nature and extent of the misconduct in this case, to rule otherwise would diminish public confidence in the judiciary, impugn the judicial disciplinary process, and would have a chilling effect on the willingness of victims of domestic violence to seek help from the judicial system.

█ Thus, pursuant to Article VIII, Sections 3 and 8 of the West Virginia Constitution and Rule 4.12 of the Rules of Judicial Disciplinary Procedure, it is clearly within this Court's power and discretion to impose multiple sanctions against any justice, judge or magistrate for separate and distinct violations of the Code of Judicial Conduct and to order that such sanctions be imposed consecutively. To hold a violator of the Code of Judicial Conduct who has committed only one offense to the same exact standard and subject that offender to the same sanctions as a violator who has committed four, five, or fifty separate acts of misconduct would suggest unreasonable disparate treatment and this Court must give proper consideration and weight to the severity of each of the independent acts of judicial misconduct when deciding appropriate sanctions.

These four victims went to the magistrate court to seek the court's help during times of stress and vulnerability. Imagine going to a magistrate's office to fill out a domestic violence petition after being beaten so badly that you required medical attention and then having the magistrate grab you and engage in revolting and inappropriate sexual contact. Such conduct cannot and will not be tolerated by this Court. On each of the four different occasions Mr. Toler engaged in improper touching of the women as well as grossly inappropriate talk about sex or sexual conduct. Moreover, on each occasion, Mr. Toler subjected each individual to grossly inappropriate sexual misconduct while he was performing his official duties as magistrate. Four separate complaints could have been presented to the Judicial Hearing Board and the Board could have recommended and this Court could have imposed sanctions in each of the four complaints. Thus, we see nothing that would preclude us from adopting, and therefore we hereby do adopt, the Judicial Hearing Board's recommendation to impose the sanctions against Mr. Toler consecutively.

Accordingly, this Court finds that Mr. Toler should be censured for his actions; that Mr. Toler be suspended for one year without pay; that Mr. Toler be fined $5,000.00; that Mr. Toler pay the costs of the proceedings before the Judicial Hearing Board; and that the aforementioned sanctions be imposed consecutively for each of the four violations Mr. Toler committed against the four female victims which resulted in four separate and distinct violations of the Code of Judicial Conduct. We further hold that Mr. Toler's four-year suspension as Magistrate begins from July 14, 2005, the date of the amended formal charges filed by the Judicial Investigation Commission. We believe the recommended sanctions are fair and meet the objectives of preserving public confidence in the legal profession and the judicial process.

Finally, we note that Mr. Toler has a motion pending for back pay as a result of the February 24, 2005, acquittal to the criminal charges filed against him in the Circuit Court of Wayne County. On July 7, 2004, this Court suspended Mr. Toler from his position as Magistrate of Wayne County, without pay, until the resolution of those criminal charges against him. Following his

acquittal, Mr. Toler filed a motion for back pay and reinstatement as magistrate. On June 1, 2005, we held Mr. Toler's motion for reinstatement with back pay in abeyance until the Judicial Investigation Commission determined whether to proceed with the charges against him. On June 8, 2005, the Judicial Hearing Board rejected Mr. Toler's motion to dismiss the charges against him and the Board filed a motion to allow it to conduct a disposition hearing on this matter. Such hearing was conducted on July 13, 2005, and July 14, 2005, and on September 6, 2005, the Board filed its Recommended Findings of Fact, Conclusions of Law, and Proposed Disposition with this Court.

■ After thoroughly reviewing the facts of this matter, we have determined that Mr. Toler is due back pay from July 7, 2004, until June 8, 2005, the date when the Judicial Investigation Commission decided to proceed with the investigation of the charges against him. Mr. Toler's award of back pay, however, shall be offset by the imposition of the four separate $5,000.00 sanctions we have adopted and imposed against Mr. Toler as well as the expenses resulting from the costs of the proceedings before the Judicial Hearing Board. Such costs are to be determined by the Judicial Hearing Board and the Judicial Investigation Commission and certified to this Court within thirty days of this Opinion.

## IV.

### CONCLUSION

For the foregoing reasons, we adopt the recommended sanctions as set forth by the Board and order that Magistrate William Tom Toler be publicly censured; that he be

suspended for one year without pay; that he be fined $5,000.00; that he pay the costs of the proceedings before the Judicial Hearing Board; and that each of the sanctions herein levied be imposed consecutively for each of the four violations Mr. Toler committed against the four female victims which resulted in four separate and distinct violations of the Code of Judicial Conduct. We further hereby order that the four consecutive $5,000.00 fines, as well as the costs assessed against Mr. Toler for the Judicial Hearing Board's proceedings, shall be offset against any back pay owed to Mr. Toler and that all reasonable costs and expenses of the proceedings against him shall be determined by the Judicial Hearing Board *and* by the Judicial Investigation Commission and certified to this Court within thirty days of the issuance of this Opinion. Moreover, such costs shall include, but not be limited to, all costs for staff, attorneys, travel, etc., for investigating and prosecuting the matter as well as all costs necessary to conduct the hearing against Mr. Toler. Finally, we hold that the date of Mr. Toler's suspension shall begin on July 14, 2005, and shall continue thereafter for a period of four years from and after that date.[5]

Public Censure, Fine, One Year Suspension Without Pay, Costs, With Each of these Sanctions to be Imposed Consecutively.

---

5. We note that as a practical matter Mr. Toler's term in office ends December 31, 2008, while our four year suspension imposed upon him extends beyond that date by nearly six months. We decline to address at this time whether or not Mr. Toler's suspension would continue should he be re-elected in 2008.