No. 12-1008 – *In the Matter of: Judge William M. Watkins, III*

**FILED**

**March 26, 2013**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Benjamin, Chief Justice, concurring:


I completely agree with the Majority's decision to suspend Judge Watkins through the end of his current term. The acts giving rise to this case are egregious and fully justify this sanction. I likewise believe that the mandate should issue immediately.


While I agree with the result herein, I write separately to underscore my disagreement with the Majority's resort to and reliance upon a highly questionable invocation of *inherent* judicial powers—a recourse as unnecessary as it is unprecedented. More troubling, the Majority's new syllabus point, syllabus point 8, places no limitation absent impeachment on this Court's assertion of inherent power despite an express constitutional limitation to the contrary.[1] While I have the utmost respect for my colleagues and the professionalism of our current Court and share their belief that the admittedly harsh sanction in this case is fully justified, I fear how a highly partisan or polarized future Court might misuse this expansive new precedent.


The Majority's resort to inherent powers is unnecessary. Our decision, *In re Toler*, 218 W. Va. 653, 625 S.E.2d 731 (2005), already provides the basis for

---

[1] It is within the Legislature's power to consider impeachment at any time during which Judge Watkins is actively serving his suspensions.

1

suspending Judge Watkins, through consecutive one-year suspensions, until the end of his current term of office. In *Toler*, the Court imposed sanctions against Magistrate Toler including four consecutive one-year suspensions for four violations of the Code of Judicial Conduct. In concluding that the Court had the authority to order consecutive one-year suspensions, the Court said,

> It is clear to us that Rule 4.12 of the Rules of Disciplinary Procedure sets forth available sanctions for "a" violation of the Code of Judicial Conduct. It is equally apparent that W.Va. Const., Art. VIII, § 8 provides authorization for this Court to sanction a judicial officer for "any" violation of the Code. In this case, the Judicial Hearing Board recommended sanctions against Mr. Toler for each of the four separate violations against each of the four victims in this case. Having found that Mr. Toler did, in fact, violate the Code of Judicial Conduct on at least four different occasions, in four completely separate and distinct situations, and against four separate individuals, it simply would make little or no sense to find in any other manner than to impose sanctions against Mr. Toler for each of the separate violations and to impose such sanctions consecutively. Given the nature and extent of the misconduct in this case, to rule otherwise would diminish public confidence in the judiciary, impugn the judicial disciplinary process, and would have a chilling effect on the willingness of victims of domestic violence to seek help from the judicial system.

*Toler*, 218 W. Va. at 661, 625 S.E.2d at 739.

Article VIII, Section 8 of the Constitution of West Virginia provides that this Court ". . . is authorized to censure or *temporarily* suspend any justice, judge or magistrate . . . for *any violation* of any . . . code of ethics . . . ." (Emphasis added). As

2

noted by the Majority, Judge Watkins committed 24 separate such violations of the Canons of the Code of Judicial Conduct. In *Toler*, we established that a one-year suspension for an individual ethical violation fully comports with the constitutional term, "temporarily." We furthermore held in *Toler* that temporary suspensions for separate ethical violations may run consecutively. Here we have 24 separate violations. A suspension of four total years extending to the end of Judge Watkins's current term is therefore fully consistent both with the express language of our constitutional limitation of authority and with our existing precedent.

The Majority's tortuous venture into the realm of "implied power" seems more a pretext to expand judicial power than a logical and necessary application of solid, existing legal principles.[2] This case does not raise issues typical of those traditionally considered for "implied powers," such as where the Court is seeking to protect a judicial proceeding or a judgment made in the course of its traditional responsibilities. Rather, it is a case in which the Court is expansively interpreting an express constitutional limitation restraint on its power involving a publicly-elected judicial official, *i.e.*, the limitation set forth in Article VIII, Section 8 that the Court may suspend a judicial officer only temporarily for each ethical violation. The Majority's rationale is not persuasive.

---

[2] The Majority's argument overlooks the "any violation" language of Article VIII, Section 8. Since there is no limitation on the number of violations which this Court may find from a given judicial officer's ongoing course of ethical misconduct, there likewise is no limitation on the number of temporary suspensions which may be aggregated together for multiple violations.

Our courts were not intended to operate with unlimited powers. A system that gives to the Court the unfettered ability to transform an express constitutional limitation on its powers into an *inherent* elimination of any such limitation on its powers is at odds with the most basic tenet of limited government—a principle of restraint necessary for our judiciary as for other branches. Our duty to be mindful of the limitations of governmental power under our Constitution begins at home. This vigilance is every bit as important in our own actions as in our review of the actions of the other branches.

When the judicial branch undertakes to define its own authority, self-restraint is imperative. "Principles of deference counsel restraint in resorting to inherent power . . . and require its use to be a reasonable response to the problems and needs that provoke it . . . ." *Degen v. United States*, 517 U.S. 820, 823–24 (1996) (internal citations omitted). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). *See also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 451 (1911) ("[T]he very amplitude of [inherent] power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper.").

If the judiciary's only boundary is the boundary it provides for itself, is there any boundary at all?