IN THE MATTER OF FREDERICK L. BROWN.

Suffolk. February 6, 1998. - March 24, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Judge.*

A public reprimand was the appropriate sanction to be imposed, in the circumstances, on a justice of the Appeals Court for the justice's inappropriate and unjustified comments to an attorney at oral argument that were so intemperate, excessive, and insulting as to create an appearance of partiality in violation of S.J.C. Rule 3:09, Canons 2 (A) and 3 (A)·(3). [148-154]

FORMAL CHARGES filed in the Supreme Judicial Court on April 22, 1997.

A hearing was held before the Commission on Judicial Conduct and a recommendation for discipline was submitted to this court.

*Henry F. Owens, III (Lawrence P. Murray* with him) for Frederick L. Brown.

*Michael B. Keating (Jack W. Pirozzolo* with him) for Commission on Judicial Conduct.

BY THE COURT. The Commission on Judicial Conduct (Commission) has issued a report and recommended a public reprimand in the matter of Justice Frederick L. Brown. We conclude that a public reprimand is appropriate.

1. *The facts.* George Edwards sued the National Association of Government Employees (NAGE), alleging that NAGE had breached its duty of fair representation by not representing him in an earlier bypass appeal. The Labor Relations Commission dismissed his complaint against NAGE, and Edwards appealed from that decision to the Appeals Court.[1] On December 4, 1995, an Appeals Court panel that included Justice Brown heard argu-

[1]Although before the Labor Relations Commission NAGE is the defendant, on appeal from its decision the Labor Relations Commission itself is the appellee. See generally G. L. c. 30A, § 14.

ment in the case of *Edwards* v. *Labor Relations Comm'n*, 39 Mass. App. Ct. 1123 (1996). During oral argument, at which Edwards represented himself, Justice Brown made a series of comments to counsel for the Labor Relations Commission. His comments, which we set out in full in the Appendix, criticized NAGE, its president, Kenneth T. Lyons, and members of his family. Justice Brown stated, among other things, that Lyons "had his whole family on the [NAGE] payroll," that "[t]his is [a] union gone amok," that "people in the courthouse here who pay their dues get absolutely nothing," that "Mr. Lyons and all his family are making $200,000 a year, plus they have cars and expense accounts," and that "[t]hey [NAGE] don't represent anybody, as far as I can see. They just take the money and keep on stepping and buy more condos and have more expense accounts and have fancy banquets."[2]

On February 16, 1996, after learning of these statements, Lyons filed a complaint against Justice Brown with the Commission. The Commission initiated an investigation, and on November 15, 1996, this court, at the Commission's request, appointed special counsel. On February 10, 1997, the Commission issued a statement of allegations against Justice Brown, and on April 8, 1997, it filed formal charges against him. These charges alleged that Justice Brown's conduct in the *Edwards* case violated G. L. c. 211C, § 2 (5) (*c*), which prohibits a judge from "willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute," as well as Canons 1, 2 (A), 3 (A) (3), and 3 (C) of the Code of Judicial Conduct, S.J.C. Rule 3:09, as appearing in 382 Mass. 808 (1981). On April 30, 1997, this court appointed a retired judge of the Superior Court to hold formal hearings on these charges. These hearings were held in July and August, 1997, and on August 26, 1997, the hearing officer issued his report and recommendations, in which he concluded that the Commission had proven by clear and convincing evidence that Justice Brown violated Canons 2 (A) and 3 (A) (3). He found neither a violation of the statute nor of Canons 1 and 3 (C). The hearing of-

---

[2]We have listened to a tape recording of the oral argument. Although we would hesitate to amplify our reaction to the actual words spoken by noting their tone, we well might consider that tone as supplying a context in which the words would not be as offensive as they might appear in the written record. Suffice it to say that the recording offers no mollifying or mitigating nuance here.

ficer recommended the imposition of a private reprimand or censure and an order that Justice Brown recuse himself in future proceedings involving NAGE, Lyons, or any member of the Lyons family. Both the special counsel and Justice Brown objected to the hearing officer's final report, and on October 14, 1997, the Commission held a hearing regarding the recommendation for discipline. At Justice Brown's insistence, the hearing was public. On October 30, 1997, the Commission unanimously recommended to this court the imposition of a public reprimand in light of previous incidents of misconduct.

2. *The Canons.* Canon 2 (A) provides that "[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 3 (A) (3) states, in relevant part, that "[a] judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity . . . ." As we have said before, "The Code of Judicial Conduct requires judges in this Commonwealth to exhibit the highest standards of professional conduct." *Matter of Donohue,* 390 Mass. 514, 518 (1983).

Justice Brown insists that in this case he was entirely impartial and fair. Several of his fellow Justices on the Appeals Court, including those who were on the panel in this case, testified that integrity and impartiality characterize Justice Brown's work as a judge not only in this case but in general. We do not doubt that this is so. The two other Justices on the panel in this case had the opportunity to hear his discussion in the semble following the argument of the case. And Justice Brown and his fellow panel members point out that the Commission's judgment favorable to NAGE was unanimously affirmed by the panel on which Justice Brown was a member. See *Edwards* v. *Labor Relations Comm'n,* 39 Mass. App. Ct. 1123 (1996). Canons 2 (A) and 3 (A) (3) both, however, address matters of appearance. It is quite possible for a judge to uphold the highest standards of integrity and impartiality and yet violate these canons. That is not to say that these canons therefore address only superficial matters of etiquette and should count for little if the substance of integrity and impartiality has obtained.

Judges wield an awesome and final power over the liberty and property of their fellow citizens. This power is the more awesome because in this Commonwealth, as in the Federal

system, we are neither elected nor subject to recall or retention elections. This power is tolerable in a democracy because judges speak only for reason and the law. As stated in The Federalist No. 78 (Alexander Hamilton), we have "neither force nor will, but merely judgment." For every litigation at least one-half of those involved are likely to come away sorely dissatisfied, and every citizen has reason to apprehend that one day he might be on the losing side of our exercise of judgment. Therefore, this arrangement requires an exacting compact between judges and the citizenry. It is not enough that we know ourselves to be fair and impartial or that we believe this of our colleagues. Our power over our fellow citizens requires that we appear to be so as well. How else are ordinary citizens to have the faith in us that we have in ourselves and Justice Brown's colleagues testified that they have in him? An impartial manner, courtesy, and dignity are the outward signs of that fairness and impartiality we ask our fellow citizens, often in the most trying of circumstances, to believe we in fact possess. Surely it is arrogance for us to say to them that we may not seem impartial, but we know we are, and so they must submit. Precisely because the public cannot witness, but instead must trust, what happens when a judge retires to the privacy of his chambers, the judiciary must behave with circumspection when in the public eye.

Finally, patience and courtesy are required of a judge toward those he deals with in his official capacity for the additional reason that a judge in that official capacity is granted the power to command silence and respect in his presence. It is not punishable to interrupt or show disrespect to a legislator, the Governor, or even the President. But this unusual deference is granted the judge only to allow him to do his work. When a judge berates or acts discourteously to those before him — even if he cannot affect their interests as litigants — he abuses his power and humiliates those who are forbidden to speak back.[3] Of course there are times when a judge must and should admonish and express harsh judgment to those before him, but they must be limited to the necessities of the occasion, being neither gratuitous nor irrelevant to it.

The remarks that are the subject of this complaint violate

---

[3]As the Judicial Conference of the United States has stated, "[t]he robe a judge wears as he sits upon the bench is not a license to excoriate lawyers or anyone else." J.M. Shaman, S. Lubet, & J.J. Alfini, Judicial Conduct and Ethics 61 (2d ed. 1995).

both Canons 2 (A) and 3 (A) (3). They express what appears to be a strong animus against the union and its leadership, accusing them of a general and persistent neglect of their obligations to the membership and of self-dealing that is disgraceful if not criminal. Such accusations go far beyond any comment appropriate to the circumstances of this particular dispute, although of course if Edwards's complaint were valid it might stand as an example of the general situation Justice Brown described. In making these remarks Justice Brown did not conduct himself "in a manner that promotes public confidence in the integrity and impartiality of the judiciary." It is if anything even clearer that these remarks were the very opposite of the "patient, dignified, and courteous" conduct required of a judge. They were intemperate, excessive, unjustified by anything properly before the court, and gratuitously insulting to persons directly and indirectly implicated in the case at bar.

Justice Brown argues that these canons do not forbid the comments that he made at the *Edwards* argument.[4] First, he claims that Canon 3 (A) (3) applies only to comments made about the parties and attorneys before a judge, and not about nonparties such as Lyons, his family, or NAGE. This is incorrect. The canon requires a judge to be patient and dignified generally, regardless of the context or content of a judge's speech. As to courtesy, the canon explicitly commands that it be shown to all with whom the judge deals in an official capacity. Justice Brown admits that his "comments were directed to the lawyer for the Labor Relations Commission," who clearly was before the court.[5] Moreover, any discourtesy or impatience in Justice Brown's statements had implications for those in the courtroom; the justice spoke insultingly of persons directly af-

---

[4] Justice Brown points out that G. L. c. 211C, § 7 (4), requires that the charges be proved by "clear and convincing evidence." There are no disputed issues of fact with respect to the two charges. They are based on comments that no one disputes were made. The dispute relates to whether these comments may properly be characterized as violating the canons, that is, to the application of a legal standard to undisputed facts. In that context the statutory burden is largely inapposite. In accord with its spirit, however, we ask ourselves whether we are quite certain of our conclusions on this question of application. We are.

[5] Although the attorney in question has not filed a separate complaint about Justice Brown's conduct, that does not place discourtesy to that attorney beyond the reach of the Commission's disciplinary proceedings. Moreover, not only did NAGE have a substantive interest in the outcome of the *Edwards* case, it had filed a brief as an intervener in the matter.

fected by the outcome of the matter before him. In any event, the spirit and purpose of Canon 3 (A) (3) would hardly be served by holding that a judge may act in an undignified manner while on the bench so long as he only chooses to berate persons not present before him. Any discourtesy to NAGE, Lyons, and Lyons's family was clearly within the scope of Canon 3 (A) (3).

Second, Justice Brown argues that his comments are immunized from discipline because they derived from his knowledge of *National Ass'n of Gov't Employees* v. *Labor Relations Comm'n*, 38 Mass. App. Ct. 611 (1995) (*Moshkovitz* case), and *Rielly* v. *News Group Boston, Inc.*, 38 Mass. App. Ct. 909, cert. denied, 516 U.S. 866 (1995). Citing the "extrajudicial source" doctrine discussed in *Liteky* v. *United States*, 510 U.S. 540, 545 (1994), Justice Brown claims that, if a judge's statements are based on experience in a prior case or on judicial materials, they cannot be the basis of a disciplinary proceeding under Canon 3 (A) (3). This misreads the canon and the *Liteky* case. A judge may, indeed sometimes must, form opinions concerning those appearing before him, *Liteky*, *supra* at 551, and at times he may choose to share those opinions publicly. This does not, however, license a judge to violate Canon 3 (A) (3)'s restriction on the *manner* in which a judge must conduct himself. For the purposes of Canon 3 (A) (3), the foundation of a judge's comments is largely irrelevant.

Moreover, many of Justice Brown's comments at the *Edwards* argument were not based on a judicial source or on his prior judicial experience. Nothing in *Moshkovitz* or *Rielly* supports Justice Brown's assertions that NAGE is a union run "amok" or that Lyons and his family take members' money and buy condos or hold banquets. Nor do these cases support Justice Brown's comment that he knew of union members in the court house who "get absolutely nothing" for their union dues. These comments derived from personal opinion, not judicial sources.

Third, Justice Brown argues that Canon 3 (A) (3) should only be applied to sanction behavior that is so discourteous that it raises sufficient doubts about a judge's impartiality to require recusal. The Justice again points to *Liteky* v. *United States, supra*, in which the Supreme Court interpreted the Federal statute addressing judicial recusal, 28 U.S.C. § 455(a) (1994), and held that "expressions of impatience, dissatisfaction, annoyance, and

even anger," *id.* at 555-556, do not suffice to establish the bias or prejudice required for recusal of a Federal judge, unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. Although we have referred to *Liteky*'s reasoning in the recusal context, see *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 525 (1997), the case has little relevance in the context of Canon 3 (A) (3). Impatience, a lack of dignity, or discourtesy — the stuff of Canon 3 (A) (3) — may not suffice to demand recusal, but the bias and prejudice relevant in a recusal proceeding are not therefore necessary to find a violation of Canon 3 (A) (3). We have not previously required a showing of bias or prejudice to find a violation of Canon 3 (A) (3),[6] and we do not now.

Fourth, Justice Brown argues that his conduct is somehow excused by his position as an appellate justice, rather than a trial judge. He argues that we should consider the "unique dynamics of the appellate process," which compel an appellate justice to question litigants closely and to press for the validity of the presented arguments. All judges must exhibit rigor in their work, and Justice Brown has done so admirably for many years. But this does not diminish the importance or scope of Canons 2 (A) and 3 (A) (3), which safeguard the public's confidence in the judiciary's impartiality without which a judge's search for truth and justice, both aims of rigorous questioning at oral argument, would be futile. There are differences between trial and appellate proceedings, but they do not excuse the behavior in this case. In many respects a trial judge labors in more difficult circumstances, seeking to control parties, witnesses, and advocates, all of whom may have an interest in improperly swaying the minds of the jury. The appellate justice operates in a cooler atmosphere and has less excuse for the occasional display of temper. It is certainly appropriate for an appellate judge in oral argument to probe counsel's arguments for weaknesses in reasoning or factual support. By no stretch can the remarks we have recounted be seen as serving

---

[6]See *Matter of Donohue*, 390 Mass. 514, 518 (1983). See also *Matter of Jenkins*, 503 N.W.2d 425, 426 (Iowa 1993) (finding violation of Canon 3 [A] [3] without requiring showing of bias or partiality); *Matter of Cox*, 532 A.2d 1017, 1019 (Me. 1987) (shouting and swearing at police officer in chambers violated Canons 2 [A] and 3 [A] [3] without requiring showing of bias or partiality).

that function.[7] In any event, the canons in question do not distinguish between trial and appellate judging, nor do we see why they should. Although we certainly consider the context within which a judge's alleged misconduct takes place when applying the Code of Judicial Conduct, we are certain that the appearance of impartiality and courtesy are as important in appellate judging as at trial.

Finally, Justice Brown contends that the hearing officer erred in his application of Canon 2 (A). The hearing officer's final report to the Commission found that Justice Brown's "remarks were of such a nature as to create the appearance of partiality in the minds of at least those persons against whom they were directed." The hearing officer thus concluded that, although Justice Brown was in fact impartial and did not lack integrity, Justice Brown's comments failed to maintain the *appearance* of impartiality required by the canon. Justice Brown argues that this conclusion was impermissibly focused on the subjective impression of those in the courtroom, rather than on an objective analysis of whether a reasonable person would have found his comments offensive to the appearance of impartiality.

The hearing officer's report did not misapply Canon 2 (A). In context, the hearing officer's statement must be taken to mean these remarks would have created an appearance of partiality to a reasonable person in the situation of the person to whom they were directed. In any event, reading them for ourselves we firmly conclude that they create an appearance of partiality. No reasonable person could doubt that certain of Justice Brown's comments cast a shadow on the appearance of impartiality. Statements that NAGE was "an outfit that's always in trouble" and a "union gone amok" give an appearance of bias. Comments that "[t]hey don't represent anybody, as far as I can see. They just take the money and keep . . . buy[ing] more condos and hav[ing] more expense accounts" were groundless, irrelevant, and inappropriate, and would make an objective observer question the judge's neutrality.

3. *Reprimand.* Several of Justice Brown's colleagues on the Appeals Court have testified warmly on his behalf. They paint a picture of a judge who is conscientious, learned, intelligent,

---

[7]Justice Brown emphasizes that Edwards was appearing pro se, suggesting that therefore it was particularly important to probe his opponent's arguments. That may be, but as we have said, the remarks which are the basis of these charges probe no arguments. They merely berate and insult.

creative, and independent. Though we do not know him as well as they do, we know that his work exhibits these qualities. But the conduct we review today, though largely a matter of appearances, is unacceptable. It is, moreover, the third time that Justice Brown has been called to order for his injudicious and intemperate remarks — the two previous occasions (noted in the Commission's report) having resulted in the Commission's issuing a "confidential letter of concern" and in a confidential "informal adjustment," in which Justice Brown acknowledged he had violated Canons 1 and 3 of the Code of Judicial Conduct. The statements which are the subject of this proceeding were made less than a month after Justice Brown executed that informal adjustment. Justice Brown must show appropriate restraint, lest he destroy his ability to perform effectively the very great service he has over many years rendered the people of the Commonwealth. We therefore publicly reprimand Justice Brown for violating Canons 2 (A) and 3 (A) (3) of the Code of Judicial Conduct, and order that Justice Brown be recused from future cases involving NAGE, Lyons, or any member of Lyons's immediate family.

*So ordered.*

APPENDIX.

Justice Brown's comments included:

1. "This NAGE, whether you know it or not, is really an outfit that's always in trouble. And that's why [the last time NAGE's attorney] was here, the position that [inaudible] NAGE was so bad we sanctioned him and made him pay extra money for bringing the case here."

2. "[T]he last time NAGE was here they — he had his whole family on the payroll. And he sued the Boston Herald. And [w]e threw the case out summarily."

3. "This [NAGE] is not one of the great American unions of our country. And unions are important. If Judge Goodman were here, he would be upset, one of the greatest judges ever to sit on this court. He was a great union man. He believed in unions. This is [a] union gone amok."

4. "If [Lyons] didn't like his job he ought to quit his $100,000 job."

5. "We're talking about representation. In other words, a man or woman pay their dues for something. What do they get? For instance, I know the people in the courthouse here who pay their dues get absolutely nothing. Now, what do these people get for paying their dues? They get in trouble, they get a problem, and they expect their union to do it."

6. "I mean, they're paying big money to these unions. They must be, because I know, I just happen to have the case. Because Mr. Lyons and all his