IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**March 26, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Nos. 12-1008
& 12-0925

_____

IN THE MATTER OF:
JUDGE WILLIAM M. WATKINS, III,
Putnam County Family Court Judge

_____

DISCIPLINARY PROCEEDING

SUSPENSION WITHOUT PAY
AND OTHER SANCTIONS

_____

Submitted: February 5, 2013
Filed: March 26, 2013

Rachael L. Fletcher Cipoletti, Esq.           Robert P. Martin, Esq.
Judicial Investigation Commission             Charleston, West Virginia
Charleston, West Virginia                     Counsel for Judge Watkins
Special Judicial Disciplinary Counsel

JUSTICE KETCHUM delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN concurs, and reserves the right to file a separate opinion

SYLLABUS BY THE COURT

1.    "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syllabus Point 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W. Va. 233, 271 S.E.2d 427 (1980).

2.    "Under [Rule 4.5 of the *West Virginia Rules of Disciplinary Procedure*], the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'" Syllabus Point 4, *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

3.    "In a disciplinary proceeding against a judge, in which the burden of proof is by clear and convincing evidence, where the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the facts so stipulated." Syllabus Point 4, *Matter of Starcher*, 202 W.Va. 55, 501 S.E.2d 772 (1998).

4.    "The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *In the Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985).

5.    "Pursuant to article VIII, section 8 of the *West Virginia Constitution*, this Court has the inherent and express authority to 'prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards

i

of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]'" Syllabus Point 5, *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994).

6. Under Rule 4.12 of the *Rules of Judicial Disciplinary Procedure* [1998] the Judicial Hearing Board may recommend, or this Court may impose, one or more of the following sanctions for each violation by a justice, judge, or magistrate of the *Code of Judicial Conduct*: (1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to one year; (5) a fine of up to $5,000; or (6) involuntary retirement in limited circumstances. Additionally, this Court can assess the cost of the disciplinary proceedings against a justice, judge, or magistrate.

7. "Pursuant to Article VIII, Sections 3 and 8 of the West Virginia Constitution and Rule 4.12 of the Rules of Judicial Disciplinary Procedure, it is clearly within this Court's power and discretion to impose multiple sanctions against any justice, judge or magistrate for separate and distinct violations of the Code of Judicial Conduct and to order that such sanctions be imposed consecutively." Syllabus Point 5, *In re Toler*, 218 W.Va. 653, 625 S.E.2d 731 (2005).

8. This Court has the inherent power to inquire into the conduct of justices, judges and magistrates, and to impose any disciplinary measures short of impeachment that it deems necessary to preserve and enhance public confidence in the judiciary.

Ketchum, Justice:

In the instant case, a family court judge concedes that he was repeatedly intemperate with litigants, showed disrespect for authority, and was unable to properly manage his office and staff. The Judicial Hearing Board determined that the family court judge committed 24 separate violations of nine Canons of the *Code of Judicial Conduct*, and recommended that the judge be suspended for the next four years, until the end of his term in December 2016. The family court judge challenges the Board's recommended sanction, and argues that this Court does not have the constitutional authority to impose such a lengthy suspension.

We disagree with the judge and adopt the Board's recommended sanctions *in toto*.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

William M. Watkins, III, became a family court judge in Putnam County in 2002. Judge Watkins was reelected as a family court judge in 2008, and his present term ends on December 31, 2016.

Beginning in 2011, Judge Watkins became the subject of numerous complaints filed with the Judicial Investigation Commission. These complaints were condensed into seven discrete counts alleging at least 24 violations of the *Code of Judicial Conduct*. We discuss these violations in detail below.

1

Judge Watkins, through his attorney and in conjunction with judicial disciplinary counsel, agreed and stipulated that his conduct as alleged in the seven counts was true and that his actions violated the *Code of Judicial Conduct*.

On November 27, 2012, a Judicial Hearing Board for the Commission ("Hearing Board") conducted a hearing. At the hearing, Judge Watkins testified that he was remorseful and would attempt in the future to conform to the requirements of the *Code of Judicial Conduct*. The Hearing Board assessed Judge Watkins's demeanor and concluded that he "was less than sincere."

In a written order dated December 3, 2012, the Hearing Board concluded that Judge Watkins's behavior exhibited a pattern and practice of failing to maintain honorable, high standards of conduct and integrity; failing to act in a manner that promotes public confidence in the integrity of the judiciary; failing to treat litigants in his courtroom with respect and dignity; and failing to maintain and require decorum and order in his courtroom. The Hearing Board found that Judge Watkins lacked control over his emotions and conduct, that he had a pattern of disrespect for authority, and that he lacked self-awareness. It further determined that he had an inability to properly manage his office and staff, and to manage his caseload. The Hearing Board was also troubled that Judge Watkins did not cooperate with judicial disciplinary counsel in the investigation of the various complaints against him.

The Hearing Board concluded that Judge Watkins had committed 24 separate violations of nine separate Canons of the *Code of Judicial Conduct*. Under the *Rules of Judicial Disciplinary Procedure*, the Hearing Board noted that for each violation

2

it could recommend that this Court impose a maximum penalty of suspension for one year and a fine of up to $5,000, and that it could impose the penalties consecutively. *See* Rule 4.12(4) and (5), *Rules of Judicial Disciplinary Procedure*; Syllabus Point 5, *In re Toler*, 218 W.Va. 653, 625 S.E.2d 731 (2005). Hence, the Board could have recommended a maximum sanction against Judge Watkins of a 24-year suspension without pay plus a fine of $120,000.

In weighing the sanctions to recommend, the Board considered the number, nature, severity, and duration of the violations against Judge Watkins, the adverse effect of the violations upon various litigants, and the general public's perception of the judiciary as a result of the violations. The Board also considered Judge Watkins's "apparent failure to take meaningful responsibility for his misconduct." Finally, the Board considered "the unlikelihood that [Judge Watkins] will be able to conform his conduct to the requirements of the *Code of Judicial Conduct*." Accordingly, the Hearing Board recommended that this Court impose the following sanctions:

1. Judge Watkins should be censured on each of his twenty-four violations of the *Code of Judicial Conduct*;

2. Judge Watkins should be suspended, without pay, until his present term of office ends on December 31, 2016; and,

3. Judge Watkins should pay the costs associated with the investigation and prosecution of these proceedings.

As set forth below, we adopt the Hearing Board's recommended sanctions.

3

## II.
## STANDARD OF REVIEW

In reviewing a recommendation of the Judicial Hearing Board, this Court is required to make an independent evaluation of the Board's findings of fact and recommended sanctions in order to determine whether the allegations have been proven by clear and convincing evidence. Syllabus Point 1, *West Virginia Judicial Inquiry Comm'n v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980); Syllabus Point 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983). However, in a disciplinary proceeding against a judge, "where the parties enter into stipulations of fact, the facts so stipulated will be considered to have been proven as if the party bearing the burden of proof has produced clear and convincing evidence to prove the fact so stipulated." Syllabus Point 4, *Matter of Starcher*, 202 W.Va. 55, 501 S.E.2d 772 (1998).

## III.
## ANALYSIS

Judge Watkins stipulated to all of the misconduct alleged before the Judicial Hearing Board, and we accept the allegations as true. He disagrees, however, with the Hearing Board's recommended sanctions.

Judge Watkins argues that the recommendation that he be suspended from his office without pay until his present term ends in 2016 violates article VIII, section 8 of the *West Virginia Constitution*. That provision of the *Constitution* states that a "judge may be removed only by impeachment" by the Legislature. Judge Watkins argues that

4

the *Constitution* only permits this Court to "temporarily suspend" a judge, and not effectively impeach and remove a judge from office for the duration of his or her term.

As we discuss below, we reject Judge Watkins's argument for two reasons. First, under the *West Virginia Constitution*, suspending a judge carries substantially different consequences than impeaching and removing a judge from office. Second, the *Constitution* explicitly and inherently empowers this Court to impose all disciplinary measures short of removal from the bench in order to foster public confidence in the judiciary, and to preserve its integrity.


A. Suspension vs. Impeachment and Removal

Judge Watkins argues that the recommendation that he be suspended by this Court from office for a period commensurate with the remainder of his term is akin to impeachment, and therefore constitutionally prohibited.

Under our *Constitution*, only the Legislature has the power to remove a family court judge from office, and it may do so only by impeachment. The *West Virginia Constitution*, article VIII, section 8, states, "A justice or judge may be removed only by impeachment[.]"[1] The *Constitution* specifically extends this provision to family

---

[1] Article IV, section 9 of the *West Virginia Constitution* sets forth the process of impeachment of a State officer by the Legislature "for maladministration, corruption, incompetency, gross immorality, neglect of duty, or any high crime or misdemeanor." *See also W.Va. Code*, § 6-6-3 [1931] ("Any officer of the State or any judge may be impeached and removed from office . . . in the manner prescribed in section 9 of article IV of the constitution of this state."); *Matter of Troisi*, 202 W.Va. 390, 395 n.6, 504 S.E.2d 625, 630 n.6 (1998) ("The Judicial Hearing Board does not have the authority to

(continued . . .)

5

court judges. *See* article VIII, section 16.[2] The Legislature reaffirmed this power by statute, stating in *W.Va. Code* § 51-2A-17 [2001] that a "family court judge may be removed from office only by impeachment[.]"

Semantically, the *Constitution* equates the removal of a judge to impeachment by the Legislature. And we discern that impeachment carries significant consequences. For one, a state official who is impeached is not only removed from office but is also disqualified from holding any future "office of honor, trust or profit, under the State[.]" Article IV, section 9. For another, a state official who is impeached forfeits all rights to a state pension.[3]

---

recommend the removal of a circuit court judge, and this Court does not have the authority to remove a circuit court judge. Rather, Article VI, section 9 of the *West Virginia Constitution* provides that the house of delegates shall have the sole power of impeachment of officials, and that the senate shall have the sole power to try impeachment of officials.").

[2] Article VIII, section 16 of the *Constitution* states in part,
> Family court judges shall be elected by the voters for a term prescribed by law not to exceed eight years, unless sooner removed or retired as authorized in this article. . . .
> The provisions of section . . . eight of this article applicable to circuit judges shall also apply to family court judges.

[3] The Legislature has declared that "honorable service is a condition to receiving any pension, annuity, disability payment or any other benefit under a retirement plan." *W.Va. Code*, § 5-10A-1 [1976]. Retirement plans covered by the statute include the Public Employees Retirement System and the Judges' Retirement System. *W.Va. Code*, § 5-10A-2(a) [2008]. The pension statutes require the termination of membership in any retirement plan, and the prohibition against payment of any benefits, if a participant "rendered less than honorable service." *W.Va. Code*, § 5-10A-5(a) [2008]. "Less than honorable service" includes "[i]mpeachment and conviction . . . under the provisions of
(continued . . .)

6

The Judicial Hearing Board did not recommend that Judge Watkins be impeached by the Legislature.[4] The sanctions recommended by the Board come nowhere close to the sanctions that would result from a Legislative impeachment and removal of Judge Watkins from office, such as a forfeiture of his rights to a pension and rights to hold a future office.

Furthermore, the Board's recommendation equates to an approximate four-year suspension from office, those years falling at the end of Judge Watkins's term. Judge Watkins concedes that this Court has the authority to impose a four-year suspension. *See* Syllabus Point 5, *In re Toler*, 218 W.Va. 653, 625 S.E.2d 731 (2005) ("[I]t is clearly within this Court's power and discretion to impose multiple sanctions . . . and to order that such sanctions be imposed consecutively.") But it is incongruous for Judge Watkins to suggest that a suspension – whether for four days, four months, or four years – commensurate with the end of a judge's term is unconstitutional, while accepting that such a suspension in the beginning or middle of a judge's term would be constitutionally acceptable.

We therefore conclude that the Judicial Hearing Board's recommendation that Judge Watkins be suspended from office until the end of his term of office in

_____

section nine, article four of the Constitution of West Virginia[.]" *W.Va. Code*, § 5-10A-2(f)(1).

[4] Nothing in this opinion prohibits the Legislature from exercising its power to remove a family court judge by impeachment. *See W.Va. Constitution*, Article VIII, sections 8 and 16.

December 2016 is not akin to an impeachment and removal under the *West Virginia Constitution*.

### B. This Court's Explicit and Implicit Power
### to Impose Any Sanction Short of Removal

Judge Watkins concedes that while the *Constitution* permits this Court to suspend a judge for misconduct, he asserts that article VIII, section 8 limits the Court to "temporarily suspending" a judge. Judge Watkins does not suggest a definition for the term "temporary," other than to argue that we are not constitutionally permitted to suspend a judge from office for an extended period, such as for the remainder of his or her term. We reject this challenge to the fundamental authority of this Court to administer and preserve the judiciary.

The overriding goal of judicial discipline is to preserve public confidence in the integrity and impartiality of the judiciary. "The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *In the Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985).

Article VIII, section 8 of the *Constitution* authorizes this Court – both expressly and inherently – to adopt whatever rules of conduct and discipline are necessary to preserve public confidence in the judicial branch. As we recognized in Syllabus Point 5 of *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277 (1994),

8

Pursuant to article VIII, section 8 of the *West Virginia Constitution*, this Court has the inherent and express authority to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]"

This Court's express constitutional authority to adopt rules of judicial conduct and discipline is obvious from the language of the aforementioned article VIII, section 8 of the *Constitution*.[5]  Pursuant to this express authority, we have adopted the *Code of Judicial Conduct* and the *Rules of Judicial Disciplinary Procedure*.  Under Rule 4.12 of the *Rules of Judicial Disciplinary Procedure* [1998] the Judicial Hearing Board may recommend, or this Court may impose, one or more of the following sanctions for each violation by a justice, judge, or magistrate of the *Code of Judicial Conduct*: (1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to one year; (5) a fine of up to $5,000; or (6) involuntary retirement in limited circumstances. Additionally, this Court can assess the cost of the disciplinary proceedings against the justice, judge, or magistrate.  "[I]t is clearly within this Court's power and discretion to

---

[5] Article VIII, Section 8 states:

Under its inherent rule-making power, which is hereby declared, the supreme court of appeals shall, from time to time, prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof, and the supreme court of appeals is authorized to censure or temporarily suspend any justice, judge or magistrate having the judicial power of the state, including one of its own members, for any violation of any such code of ethics, code of regulations and standards[.]

9

impose multiple sanctions against any justice, judge or magistrate for separate and distinct violations of the Code of Judicial Conduct and to order that such sanctions be imposed consecutively." Syllabus Point 5, *In re Toler*, 218 W.Va. 653, 625 S.E.2d 731 (2005).

This Court's authority to supervise and discipline justices, judges and magistrates is also inherent in the *Constitution.* An inherent power of a court – "sometimes described as implied, essential, incidental, or necessary" – is one that is "essential to the existence, dignity and operation of a court, particularly the state's highest court. Such power is impliedly given when a court is created." James Duke Cameron, "The Inherent Power of a State's Highest Court to Discipline the Judiciary," 54 Chicago Kent L.Rev. 45, 46 (1977) (citations omitted). "[A] state's highest court, as the court most concerned with the operation of a state's judicial system, has the inherent power to supervise the conduct of judges both on and off the bench when such conduct affects the administration of justice." *Id.* at 47. This Court's inherent power has its source in at least three places: (1) in the constitutional separation of powers of the three branches of government; (2) in the general supervisory power of this Court; and (3) in the power of the Court over the conduct of members of the State Bar.

The first inherent source arises in the separation of powers doctrine. Article V of the *West Virginia Constitution* says that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" The *Constitution* goes on to state that "[t]he judicial power of the State shall be vested solely in a supreme court of appeals and in the

10

circuit courts . . . and in the justices, judges and magistrates of such courts."  Article VIII, section 1.

> The separation of powers doctrine implies that each branch of government has inherent power to "keep its own house in order," absent a specific grant of power to another branch, such as the power to impeach.  This theory recognizes that each branch of government must have sufficient power to carry out its assigned tasks and that these constitutionally assigned tasks will be performed properly within the governmental branch itself.

Cameron, *supra* at 49.

Just as the legislative branch has the power to examine the qualifications of its own members and to discipline them,[6] this Court has the implicit power to discipline members of the judicial branch.  The Court has this power because it is solely responsible for the protection of the judicial branch, and because the power has not been constitutionally granted to either of the other two branches.  "The inherent power of this court is shaped, not by prior usage, but by the continuing necessity that this court carry out its function as a supreme court."  *In re Kading*, 70 Wis.2d 508, 519, 235 N.W.2d 409, 413 (1975)

Second, the *Constitution* gives this Court the power to oversee the administration of justice in the courts of this State.  The *Constitution* grants to the Supreme Court "general supervisory control" over all circuit courts, family courts and

---

[6] Article VI, section 24 of the *Constitution* permits each house of the Legislature to "be the judge of the elections, returns and qualifications of its own members."  Article VI, section 25 permits each house to "punish its own members for disorderly behavior" and to "expel a member."

11

magistrate courts, and makes the chief justice "the administrative head of all the courts." *See* article VIII, sections 3 and 16. Inherent in this power is the authority to "supervise the actions of the officers and personnel of the judicial system in order to protect the integrity of the judicial system." Cameron, *supra* at 51-52.

Furthermore, the *Constitution*'s designation of the chief justice as the administrative head of the court system "clearly implies inherent power to take actions reasonably necessary to administer justice efficiently, fairly and economically." *Halverson v. Hardcastle*, 123 Nev. 245, 260, 163 P.3d 428, 439 (2007). As the highest constitutional court, the Court "has the responsibility to protect and preserve the judicial system. Even in the absence of specific constitutional or statutory authority, we have the inherent authority to take whatever action is necessary to effectuate this responsibility." *Matter of Ferguson*, 304 S.C. 216, 218, 403 S.E.2d 628, 630 (1991). *See also Matter of Almeida*, 611 A.2d 1375, 1382-83 (R.I. 1992) ("The inherent supervisory power includes the ability to remove and discipline judges, to safeguard and restore public confidence in the Judiciary, and to deter petitioner and all others in public service from engaging in unethical, violative conduct, abusive of the very positions they hold.").

Third, this Court's inherent authority to discipline judges arises from the Court's exclusive power to control who may be admitted to the bar. In *West Virginia State Bar v. Earley*, 144 W.Va. 504, 518-19, 109 S.E.2d 420, 430-31 (1959), we found that because attorneys are officers of the court, they are "in effect a part of the judicial system of the State" and "bear an intimate relation to the administration of justice by the courts." We therefore concluded, in Syllabus Point 7 of *Earley*, that "[t]he judicial

12

department of the government has the inherent power to define, supervise, regulate and control the practice of law and the Legislature can not restrict or impair this power of the courts or permit or authorize laymen to engage in the practice of law."[7]

Our *Constitution* requires that judges and justices be members of the bar.[8] "A judge does not cease to be a lawyer when he or she is elected to office; a judge is a lawyer whose duties are performed behind the bench rather than in front of or before the bench." *Committee on Legal Ethics v. Karl*, 192 W.Va. at 33, 449 S.E.2d 277 at 287. This Court has "recognized that it is sometimes appropriate to discipline a judge both as a judge and as a lawyer for the same misconduct." *Matter of Troisi*, 202 W.Va. 390, 397, 504 S.E.2d 625, 632 (1998). *See also*, Frank D. Wagner, Annotation, "Misconduct in Capacity As Judge As Basis for Disciplinary Action Against Attorney," 57 A.L.R.3d 1150 (1974). We have determined that, if a judge's law license is suspended, then that

---

[7] The *West Virginia Constitution* was amended in 1974 to give the Court authority to establish rules of "practice and procedure." Article VIII, section 3. We interpreted this amendment as giving the Court express authority to regulate the practice of law. *See* Syllabus Point 1, *Lane v. West Virginia State Board of Law Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982) ("Article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia."); Syllabus Point 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982) ("The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals.").

[8] Article VIII, section 7 states that a justice of the Supreme Court of Appeals must have been admitted to practice law for at least 10 years prior to election, while a circuit judge must have been admitted for at least 5 years. Article VIII, section 16 similarly states that family court judges must have been admitted to practice law in this state for at least 5 years prior to election. The *By-Laws of the State Bar*, article II, section 4, state, "Every judge of a court of record of this State shall be enrolled as an inactive member [of the bar] during his or her continuance in such office[.]"

13

lawyer is no longer qualified to "assume or hold judicial office."  Syllabus Point 6, *Committee on Legal Ethics v. Karl, supra*.

We conclude, based upon the *West Virginia Constitution*, that the constitutional power of the Legislature to remove a judicial officer by impeachment does not preclude this Court from exercising its inherent power to protect itself and the public by suspending that officer.  This Court has the inherent power to inquire into the conduct of justices, judges and magistrates, and to impose any disciplinary measures short of impeachment that it deems necessary to preserve and enhance public confidence in the judiciary.[9]

### C.  The Charges Against Judge Watkins

The Judicial Hearing Board's recommendation that Judge Watkins be suspended from office is not to punish the judge for his extensive wrongdoing, but to relieve from the bench a person whose further service will be detrimental to the judicial branch of government.  The Board identified numerous reasons for this recommendation.

First, the Judicial Hearing Board determined that Judge Watkins demonstrated contempt for the authority of this Court, for the Circuit Court of Putnam

---

[9] For examples of other courts finding an inherent and exclusive power of the judicial branch to discipline judges, see *In re Petition of Judicial Conduct Committee*, 855 A.2d 535, 538 (N.H. 2004); *In re Anderson*, 82 P.3d 1134, 1139 n.2 (Utah 2004); *In re Dunleavy*, 838 A.2d 338 (Me. 2003); *In the Matter of Ferguson*, 403 S.E.2d 628 (S.C. 1991); *In re Kirby*, 350 N.W.2d 344, 347-48 (Minn. 1984); *In re Franciscus*, 369 A.2d 1191 (Pa. 1977); *In re DeSaulnier*, 274 N.E.2d 454, 456 (Mass. 1971).

County, for the Office of the Administrative Director of the Courts, and for the Judicial Investigation Commission.

For example, in 2008, Judge Watkins entered a divorce decree for a husband and wife. When a dispute arose over equitable distribution of a pension, the parties asked Judge Watkins for a hearing on the dispute. When the judge refused to hold a hearing, one party petitioned the circuit court for a writ of mandamus. On February 7, 2011, the circuit court ordered Judge Watkins to hold a hearing within 30 days. He did not hold a hearing until four months later, and thereafter failed to enter any order.

After five months and three letters by counsel asking Judge Watkins for an order, the parties sought a second writ of mandamus. On December 20, 2011, the circuit court ordered Judge Watkins to issue a decision within 60 days. On April 20, 2012, the circuit court entered a third writ of mandamus ordering Judge Watkins to issue a decision within 15 days. When he failed to respond, a party filed a petition for a writ of mandamus from this Court, which was granted on July 5, 2012. A day later, on July 6th, Judge Watkins issued an order. Judge Watkins explained his 13-month delay in entering an order by saying that the circuit court had no authority over the family court, and had no authority to "compel me to do anything."

Second, the Judicial Hearing Board concluded that Judge Watkins was unable to properly manage his office and his staff as required by the *Code of Judicial Conduct*. The Hearing Board found that Judge Watkins and his staff repeatedly failed to conform to the statutes, rules, and regulations governing the family courts. Rather than take corrective action, Judge Watkins supported the misconduct of his staff.

15

Take, for example, Judge Watkins and his staff's demonstrated contempt toward the Domestic Violence Registry. *West Virginia Code* § 48-27-802(b) [2009] requires that any court entering a domestic violence protective order "shall immediately register such an order in the domestic violence database." This database – the Registry – is a matter of public safety, as it permits law enforcement officers in any jurisdiction to instantly ascertain whether a protective order is in effect, enhancing the safety of both the officer and the potential victim. Rule 21(b) of the *Rules of Practice and Procedure for Domestic Violence Civil Proceedings* [2011] requires a family court judge to "immediately enter all domestic violence-related orders on the West Virginia domestic violence database."

The Administrative Office of this Court has given multiple training sessions for judges and their staff on the operation of the Domestic Violence Registry. However, Judge Watkins and his staff repeatedly refused to comply with the requirements of the Registry. In a memo sent to the Court's Director of Family Court Services, Judge Watkins stated that his staff simply did not have time for the "project." While virtually every other judicial officer in the State assisted in promptly supplying information to the Registry, Judge Watkins and his staff did not. Putnam County 911 staff advised the Administrative Office that Judge Watkins's orders were posted to the Registry several days late, if at all. Several times Administrative Office employees had to make repeated requests that Judge Watkins and his staff upload orders to the Registry. In one instance when an order was not uploaded, Judge Watkins had to be told that a domestic violence respondent was in the possession of a firearm, and then later told that the respondent had

16

been arrested following the victim with a loaded firearm, before the order was uploaded. In another, the Administrative Office made requests for nine months asking that Judge Watkins and his staff upload an order, to no avail.

The Hearing Board further found that Judge Watkins demonstrated a lack of diligence in the performance of his official duties.

Next, the Hearing Board concluded that Judge Watkins demonstrated a lack of courtesy, civility, decorum, and judicial comportment in the conduct of hearings. He also demonstrated intemperance in the case of correspondence where he had time for more careful reflection. Additionally, the Hearing Board determined that Judge Watkins demonstrated a preference for using threats, intimidation, profanity, and shouting rather than the tools available to judges, including civil and criminal contempt, to deal with admittedly difficult litigants in a manner that conforms to the requirements of the *Code of Judicial Conduct*. Judge Watkins demonstrated a failure to control his anger and emotions. Lastly, he demonstrated a failure to properly and promptly disqualify himself even after acknowledging, on the record, that he could not continue to preside in an impartial and unbiased manner.

For example, in a divorce case, Judge Watkins yelled at Complainant 1 in several hearings, which prompted Complainant 1 to file ethics complaints alleging Judge Watkins was prejudiced against him. On May 23, 2012, Judge Watkins convened a hearing that began with the following dialogue with Complainant 1:

> *Judge*: Before we get started . . . , if you say one word out of turn you're going to jail . . . do you understand me? Yes or no?

17

*Complainant 1*: Yes.

*Judge*: After we closed here you went out there talked to a reporter . . . five seconds after you left here. . . . This morning I now see an article from your little buddy Smith with a picture of my home . . . my home on the front page.

*Complainant 1*: [inaudible]

*Judge*: SHUT UP! [sound distortion] Did I tell you to speak? My wife is disabled, she is there alone . . . and you, you disgusting piece of . . . you put our picture of my house . . . because of you . . . my house has been vandalized four times you realize that of course because I'm sure you're probably in on it laughing about it.

I swear to you.

You're responsible.  You are responsible.  I am holding you personally responsible for anything that happens at my house. . . .

It's disgraceful that you and your little buddies do not have the guts, the integrity, just the human decency, but no you gotta threaten my family now, well buddy, its personal . . . it is personal.  You have threatened my family and I promise you you will not hear the end of it from me.

In fact.

I'm going to recuse . . . I tell you I'm too angry to even be appropriate in this case.

Moments after acknowledging that he was too angry to properly hear the case, Judge Watkins apologized to Complainant 1's ex-wife and her counsel, and then decided *not* to recuse himself from the case.  Judge Watkins continued the hearing, later accusing Complainant 1 of telling "a damn lie and you know it's a damn lie."  Several

18

times when Complainant 1 attempted to speak, the judge cut him off and told him to "shut up."

In a hearing involving Complainant 2, a female, Judge Watkins offered numerous vulgar interjections during the one proceeding, including saying "oh, shit," referring to Complainant 2's child as "the little stinker," and saying, "okay, we've crapped around enough on this thing." He referred to the child's father by saying he "got into some dumb shit," that he was "the biggest jackass in the whole operation," and the father "knows if he screws up it's his ass." When the judge snapped at Complainant 2 about the father, saying she "picked him to have a child with," she said:

> *Complainant 2*: No, actually I didn't. It was an accident.
>
> *Judge*: Well, honey. It ain't an accident. You don't get 'em off of toilet seats. Okay?

Upset by the judge's comments, Complainant 2 filed a complaint with judicial disciplinary counsel. Judge Watkins replied to the complaint in a letter to disciplinary counsel, admitting that he likes to "use earthy language at times to make a point." However, the judge said,

> There is nothing that even remotely alleges an ethics violation. The sad thing is that in the time I've had to take to respond to this nonsense means that four hearings now have to be postponed. Inasmuch as I now have over 2600 hearings per year, that means at least 8 people will have to wait an additional 3 or 4 months to have their case resolved. I would appreciate it in the future that you keep this in mind and perhaps do a little investigation on your own before you waste more valuable court time.

19

In a third case, Complainant 3 – who was ordered to pay his ex-wife back child support – filed a medical malpractice action. Judge Watkins ordered Complainant 3 to notify the family court of any settlement. After Complainant 3 entered into a confidential settlement agreement, Complainant 3 told the family court he could not disclose the amount of the settlement. Judge Watkins demanded to know where the money was:

> *Judge*: Where is it?
>
> *Complainant 3*: Well, contact my lawyer. . . .
>
> *Judge*: No, God damn it.
>
> *Complainant 3*: Don't cuss me, sir . . .
>
> *Judge*: I'm gonna cuss you cause you came into my courtroom and lied. . . . Well, why hasn't she been paid?
>
> *Complainant 3*: Well, contact my lawyer, sir. I don't . . .
>
> *Judge*: I don't (slammed something down hard). . . . It's not my job. . . . Okay. Take his ass into custody. I'm tired of it. Now you call up your lawyer and you find out how to get your butt out and that's to sign over the money. Got me? Great.

At a later hearing (after Complainant 3 was released from jail), Judge Watkins cut off Complainant 3 by saying,

> Oh be quiet. That is a bunch of crap. You know by the way sir, I'm very familiar with . . . all the choice things and threats you had to make about me. You aren't man enough to say it to me in court but you're really good about talking about me behind my back. I know about you accosting somebody so I don't much care for your freaking attitude.

20

In all of the hearings at issue involving Complainant 3, Judge Watkins admitted that he "spoke in a raised voice and at times yelled."

In a fourth case, Complainant 4 sought a domestic violence protective order against her then-husband. Judge Watkins criticized Complainant 4 for "shooting off your fat mouth about what happened. Shut up!" The judge then asked Complainant 4 if she thought he was "a funny guy," and said,

> Shut up! You stupid woman. Can't even act properly. One more word out of you that you aren't asked a question you're out of here and you will be found in direct contempt of court and I will fine you appropriately. So, shut your mouth. You know I hate it when people are just acting out of sheer spite and stupidity.

As a final example, Complainant 5 asked Judge Watkins to recuse himself from a divorce case because he once represented Complainant 5's wife in a bankruptcy matter. Judge Watkins wrote a letter to Complainant 5 stating:

> I cannot speak to litigants. Period. If you think I should recuse myself, please file the appropriate pleadings and I will review it. I was not aware that I had filed a bankruptcy petition on behalf of your wife.
>
> I have reviewed your complaint, and your perspective seems to be held by you. Every other witness describes you as rude, obnoxious, loud, unprofessional and generally acting like the south end of a north-bound horse. I choose to believe them.

Judge Watkins admitted, and the Judicial Hearing Board concluded, that he committed twenty-four separate violations of nine separate Canons of the *Code of Judicial Conduct*. Those nine Canons are:

21

## 1. Canon 1(A)

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

## 2. Canon 2(A)

A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

## 3. Canon 2(B)

A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment.

## 4. Canon 3(B)(1)

A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.

## 5. Canon 3(B)(3)

A judge shall require order and decorum in proceedings before the judge.

## 6. Canon 3(B)(4)

A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

### 7. Canon 3(B)(5)

A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice. . . .

### 8. Canon 3(B)(8)

A judge shall dispose of all judicial matters promptly, efficiently, and fairly.

### 9. Canon 3(C)(1)

A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

A Clarksburg lawyer (who rose to be chief counsel for the IRS) once wrote, "A judge is a leader whether he wants to be or not. He cannot escape responsibility in his jurisdiction, for setting the level of the administration of justice and of the practice of law."[10] Citizens judge the law by what they see and hear in courts, and by the character and manners of judges and lawyers.[11] "The law should provide an exemplar of correct behavior. When the judge presides in court, he personifies the law, he represents the sovereign administering justice and his conduct must be worthy of the majesty and honor of that position." *Matter of Ross*, 428 A.2d 858, 866 (Me. 1981). Hence, a judge must

---

[10] Arch M. Cantrall, "The Judge as a Leader: The Embodiment of the Ideal of Justice," 45 ABA Journal 339, 340 (April 1959).

[11] Or, as Justice Brandeis once said, "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example." *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting).

23

be more than independent and honest; equally important, a judge must be perceived by the public to be independent and honest. Not only must justice be done, it also must appear to be done.

Socrates said, "Four things belong to a judge: to hear courteously, to answer wisely, to consider soberly, and to decide impartially." We recognize that regulating the demeanor of a judge is a difficult task, because judges are human and may occasionally display anger or annoyance, and lawyers and litigants sometimes incite judges. Judges must also be allowed some flexibility in criticizing the performance of lawyers who appear before them. But a judge owes a duty to treat lawyers and litigants courteously, to hear them patiently, to study their arguments and evidence conscientiously, and to decide their cases promptly.

Judges wield an immense power over the liberty and property of their fellow citizens, so that power must be exercised with caution. "For every litigation at least one-half of those involved are likely to come away sorely dissatisfied, and every citizen has reason to apprehend that one day he may be on the losing side of our exercise of judgment." *Matter of Brown*, 427 Mass. 146, 149, 691 N.E.2d 573, 576 (1998). Accordingly, there exists

> an exacting compact between judges and the citizenry. It is not enough that we know ourselves to be fair and impartial or that we believe this of our colleagues. Our power over our fellow citizens requires that we appear to be so as well. How else are ordinary citizens to have the faith in us . . . ? An impartial manner, courtesy, and dignity are the outward sign of that fairness and impartiality we ask our fellow citizens, often in the most trying of circumstances, to believe we in fact possess. Surely it is arrogance for us to say to them that

we may not seem impartial, but we know we are, and so they must submit. Precisely because the public cannot witness, but instead must trust, what happens when a judge retires to the privacy of his chambers, the judiciary must behave with circumspection when in the public eye.

*Id.*

When a judge insults, ridicules, or disparages counsel, the parties, jurors, or witnesses, it is clearly misconduct. Judges may be "appropriately disciplined for using abusive, insulting, intemperate, obscene, profane, threatening, vulgar, or other offensive language." *In re Pauley*, 173 W.Va. 228, 235, 314 S.E.2d 391, 398 (1983). The excuse by Judge Watkins that he likes to "use earthy language at times to make a point" with certain litigants does not excuse his use of profanity and threats, but rather demonstrates his lack of impartiality. As one court said, "We reject as unacceptable the suggestion that an individual's lack of education authorizes a court to deal with him differently. All persons are equal before the law. The poor and uneducated are entitled to the same treatment as the rich and learned." *Matter of Ross,* 428 A.2d at 866. Furthermore, "judicial intemperance invariably conveys the message of a closed mind. It is never appropriate for a judge to become a 'combatant with a party.' Participants will never accept that a decision rendered by a combatant is fair." *In re O'Dea*, 159 Vt. 590, 605, 622 A.2d 507, 516 (1993). A pattern of judicial discourtesy like that exhibited by Judge Watkins represents a profound threat to the integrity of the judiciary, and consequently demands a strong response.

It is also misconduct for a judge to unreasonably delay resolving a case. "Under article III, § 17 of the West Virginia Constitution, which provides that 'justice

25

shall be administered without sale, denial or delay,' and under Canon 3A(5) of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.), which provides that 'A judge should dispose promptly of the business of the court,' judges have an affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission." Syllabus Point 1, *State ex rel. Patterson v. Aldredge*, 173 W.Va. 446, 317 S.E.2d 805 (1984). In Syllabus Point 2 of *Matter of Sommerville*, 178 W.Va. 694, 364 S.E.2d 20 (1987), we established the right to impose "judicial discipline for unreasonable delays in the disposition of court business." The refusal by Judge Watkins to promptly issue orders or hold hearings, even when ordered to do so by the circuit court, likewise represents a profound threat to the integrity of the judiciary.

Additionally, it should go without saying that "[d]omestic violence cases are among those that our courts must give priority status." Syllabus Point 6, *In re Browning*, 192 W.Va. 321, 452 S.E.2d 34 (1994). Yet Judge Watkins and his staff repeatedly disregarded their duty to promptly post orders to the Domestic Violence Registry, thereby endangering both victims of domestic violence and police officers charged with enforcing those orders. Judge Watkins characterized the statutorily-mandated database as a "project" he was too busy to comply with. His failure to comply with the law, and his failure to supervise his staff, represents a repeated and profound threat to the integrity of the judiciary.

The overriding goal of judicial discipline is to preserve public confidence in the integrity and impartiality of the judiciary. That confidence was plainly sullied by the actions of Judge Watkins.

26

Accordingly, we adopt the sanctions recommended by the Judicial Hearing Board.

## IV.
## CONCLUSION

This Court imposes the following discipline upon the respondent, Judge William M. Watkins, III:

1. Judge Watkins is censured on each of his twenty-four violations of the *Code of Judicial Conduct*.

2. Judge Watkins is forthwith suspended, without pay, from his office as judge of the Family Court of Putnam County until his present term of office ends on December 31, 2016; and

3. Judge Watkins shall pay all of the costs associated with the investigation and prosecution of these proceedings.

The Clerk of this Court is ordered to issue the mandate forthwith.

Suspension without pay and other sanctions ordered.